## HAGGAR COMPANY v. HELVERING, COMMIS-SIONER OF INTERNAL REVENUE.

No. 176. Argued December 15, 1939.—Decided January 2, 1940.

*Mr. Thomas M. Wilkins,* with whom *Mr. Lloyd E. Elliott* was on the brief, for petitioner.

*Miss Helen R. Carloss,* with whom *Solicitor General Jackson, Assistant Attorney General Clark,* and *Messrs. Sewall Key* and *W. Croft Jennings* were on the brief, for respondent.

By leave of Court, *Mr. Theodore B. Benson* filed a brief (*Mr. John J. Fitzgerald,* for Blake & Kendall Company, of counsel) on behalf of the Philadelphia Brewing Company, as *amicus curiae,* in support of the petitioner.

MR. JUSTICE STONE delivered the opinion of the Court.

Decision in this case turns on the question whether a capital stock tax return filed pursuant to § 215 of the National Industrial Recovery Act of 1933, 48 Stat. 195, 207, may be amended within the time fixed for filing the return.

Sections 215 and 216 of the National Industrial Re-
covery Act impose interrelated taxes on domestic corpora-
tions, namely an annual capital stock tax and an annual
tax on profits in excess of 12½ per cent of the capital
stock, calculated on the basis of the value of the capital
stock as fixed by the corporation's return for the first
year in which the tax is imposed.

Section 215 (a) imposes on domestic corporations an
annual tax with respect to carrying on or doing business
for any part of the taxable year at the rate of "$1 for
each $1,000 of the adjusted declared value of its capital
stock." Section 215 (f) provides that "For the first year
ending June 30 in respect of which a tax is imposed by
this section upon any corporation, the adjusted declared
value shall be the value, as declared by the corporation
in its first return under this section (which declaration of
value cannot be amended), as of the close of its last in-
come-tax taxable year ending at or prior to the close of
the year for which the tax is imposed by this section. . . .
For any subsequent year ending June 30, the adjusted
declared value in the case of a domestic corporation shall
be the original declared value" as changed by certain
prescribed capital adjustments occasioned by increases
and decreases of capital occurring after "the date as of
which the original declared value was declared." Section
216 (a) imposes an annual tax upon so much of the net
income of a corporation taxable under § 215 (a) as is in
excess of 12½ per cent of the "adjusted declared value of
its capital stock . . . as of the close of the preceding
income-tax taxable year (or as of the date of organization
if it had no preceding income-tax taxable year) . . . ."

It will be observed that by § 215 (a) and (f) the
declared value of capital stock which is made the basis
of computation of both taxes is not required to conform
either to the actual or to the nominal capital of the tax-

paying corporation; and that the declared value for the first taxable year, with the addition or subtraction of specified items of subsequent capital gains or losses is made the basis of the computation of both taxes in later years. The taxpayer is thus left free to declare any value of capital stock for its first taxable year which it may elect, but since the declared value for the first year is a controlling factor for the computation of taxes for later years, the statute provides that the declaration once made cannot be amended. Because of the method of computation, increase or decrease in the declared value of capital, and of the corresponding tax, produces, as the case may be, a decrease or an increase in the tax on excess profits.

In August, 1933, petitioner, a Texas corporation, mistakenly believing that it was required to state the par value of its issued capital stock in its tax return, filed a timely return for the year ending June 30, 1933, declaring the value of its entire capital stock to be $120,000 and paid the tax of $120. The date for filing returns for that year having been extended to September 29, 1933, T. D. 4368, 4386, petitioner before that date filed an amended return, declaring the value of its capital stock to be $250,000. On March 15, 1934, petitioner filed its income and excess profits tax return for the calendar year 1933. The Commissioner, having refused to accept the amended capital stock return, gave notice of a deficiency in the excess profits tax calculated upon the basis of the capital stock value of $120,000 as declared in petitioner's original return.

The Board of Tax Appeals determined that petitioner's capital stock and excess profits tax should be computed on the basis of $120,000 capital stock value as originally stated instead of $250,000 stock value declared in its amended return, found a deficiency, and entered its order accordingly. 38 B. T. A. 141. The Circuit Court of

Appeals for the Fifth Circuit affirmed, holding that
§ 215 (f) by its terms precluded any amendment of the
tax return for the first year even though made within
the time allowed for filing the return. 104 F. 2d 24. We
granted certiorari October 9, 1939, to resolve a conflict of
the decision below with that of the Court of Appeals for
the Sixth Circuit in *Glenn* v. *Oertel Co.*, 97 F. 2d 495,
and that of the Court of Claims in *Philadelphia Brewing
Co.* v. *United States*, 27 F. Supp. 583.

The Commissioner founds his argument in support
of the decision below upon a literal reading of the in-
troductory sentence of § 215 (f) already quoted, which,
he argues, precludes even a timely amendment of the tax
return for the first year, and upon the administrative
and Congressional interpretation of the statute. He in-
sists that the phrase "first return" in the clause "declared
value shall be the value as declared by the corporation in
its first return under this section (which declaration of
value cannot be amended)," means the first paper filed
by the taxpayer as a return, and that these words plainly
forbid any amendment of the declared value of the capi-
tal stock, even though made within the time allowed
for filing the return.

In making these contentions the Commissioner con-
cedes that the amount of the declared value of capital
fixed for the first year is a matter of indifference to the
Government since the statute leaves the taxpayer free
to declare any amount which its fancy may choose and
that for any reduction in capital stock effected by the
declaration of a low value of the capital stock there is
an accompanying increase in excess profits taxes. He
concedes that if petitioner had filed but a single return
on the date of filing the amended return, stating the
value of the capital stock as $250,000 instead of $120,000,
the Government would have been concluded by the tax-
payer's declaration and that it has long been the practice

of the department, in the cases of other types of tax to accept an amended return, filed within the period allowed for filing returns, as the return of the taxpayer for the taxable year. He concedes also, as he logically must, that the argument leads to the conclusion that a mistake in the declaration of value whether of law or of fact, however serious and excusable, cannot be corrected by a timely amendment of the return.

All statutes must be construed in the light of their purpose. A literal reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose. *Hawaii* v. *Mankichi*, 190 U. S. 197; *United States* v. *Katz*, 271 U. S. 354; *Sorrells* v. *United States*, 287 U. S. 435, 446; *Burnet* v. *Guggenheim*, 288 U. S. 280, 285; *Armstrong Co.* v. *Nu-Enamel Corp.*, 305 U. S. 315, 332–3. Here the purpose of the statute is unmistakable. It is to allow the taxpayer to fix for itself the amount of the taxable base for purposes of computation of the capital stock tax, but with the proviso that the amount thus fixed for the first taxable year shall be accepted, with only such changes as the statute prescribes for the purpose of computing the capital stock and excess profits taxes in later years. Congress thus avoided the necessity of prescribing a formula for arriving at the actual value of capital for the purpose of computing excess profits taxes, which had been found productive of much litigation under earlier taxing acts, see Sen. Rep. 52, 69th Cong., 1st Sess., pp. 11–12; cf. *Ray Consolidated Copper Co.* v. *United States*, 268 U. S. 373, 376. At the same time it guarded against loss of revenue to the Government through understatements of capital, by providing for an increase in excess profits tax under § 216 ensuing from such understatements.

It is plain that none of these purposes would have been thwarted and no interest of the Government would have

been harmed had the Commissioner, in conformity to established departmental practice, accepted the petitioner's amended declaration. It is equally plain that by its rejection petitioner has been denied an opportunity to make a declaration of capital stock value which it was the obvious purpose of the statute to give, and that denial is for no other reason than that the declaration appeared in an amended instead of an unamended return. We think that the words of the statute, fairly read in the light of the purpose, disclosed by its own terms, require no such harsh and incongruous result.

Section 215 nowhere mentions amendment of returns or amended returns. It speaks of "declared value" for the first tax year and provides that the "declaration of value" cannot be amended. The "declaration of value" is that of the corporation in its "first return under this section." The "first return" as the context shows is the return for the first tax year of the taxpayer and the characterization of the return as "first" is obviously used to distinguish the return made for the first year from the return "for any subsequent year" in which the "adjusted declared value" is required by the same section to conform to a formula based on the "declared value" for the first year and which, for that reason, "cannot be amended."

"First return" thus means a return for the first year in which the taxpayer exercises the privilege of fixing its capital stock value for tax purposes, and includes a timely amended return for that year. A timely amended return is as much a "first return" for the purpose of fixing the capital stock value in contradistinction to returns for subsequent years, as is a single return filed by the taxpayer for the first tax year. *Glenn* v. *Oertel Co., supra; Philadelphia Brewing Co.* v. *United States, supra;* see also, similarly construing the phrase "first return" under § 114 (b) (4) of the Revenue Act of 1934, 48 Stat. 680,

710; *C. H. Mead Coal Co.* v. *Commissioner,* 106 F. 2d 388, 390; cf. *Pacific National Co.* v. *Welch,* 304 U. S. 191, 194. Thus read the statute gives full effect to its obvious purposes and to the evident meaning of its words. To construe "first return" as meaning the first paper filed as a return, as distinguished from the paper containing a timely amendment, which, when filed is commonly known as the return for the year for which it is filed, is to defeat the purposes of the statute by dissociating the phrase from its context and from the legislative purpose in violation of the most elementary principles of statutory construction.

Article 24 of Treasury Regulations 64 (1933 ed.), under § 215 (f) of the National Industrial Recovery Act, in force when the petitioner filed its amended return, did not call for any different construction from that which we have indicated is the correct one. The article made no mention of the "first return." It pointed out merely that the original declared value would be the basis of the tax for the first and later years, and stated "This value once having been declared may not subsequently be changed either by the corporation or by the commissioner." This evidently refers to the parenthetical clause of § 215 (f) "which declaration cannot be amended" which phrase concededly does not preclude an effective declaration of value in a timely amended return.[1]

Sections 215 and 216 of the National Industrial Recovery Act were reënacted as §§ 701 and 702 of the 1934

---

[1] The Government concedes in its brief that the parenthetical clause "which declaration cannot be amended" continued in the capital stock tax section, § 601, of the 1938 Revenue Act, 52 Stat. 447, 565, does not preclude an effective declaration of value in a timely amended return for the first tax year. If the phrase "first return" in § 215 (f) had that effect, then the parenthetical phrase concededly prohibiting amendments in tax returns of later years would have been superfluous.

Revenue Act, 48 Stat. 680, 769, 770. That act, § 703, amended the National Industrial Recovery Act so as to provide that the capital stock tax and excess profits tax imposed by §§ 215 and 216 of the act last mentioned should not apply respectively to any taxpayer in any year except the years ending June 30, 1933 and June 30, 1934. The amended Regulations 64 (1934 ed.), relating to §§ 701 and 702 of the Revenue Act of 1934, are prefaced with the statement "It must constantly be borne in mind that these regulations relate only to the tax imposed by § 701 of the Revenue Act of 1934. With respect to the tax imposed by § 215 of the National Industrial Recovery Act consult Regulations 64, edition of 1933." This warning was repeated in Regulations 64, 1936 edition, under the corresponding §§ 105 and 106 of the 1935 Revenue Act, 49 Stat. 1014, 1017–1019.

Since the regulations under the Revenue Acts for 1934 and 1935 are thus made inapplicable to the taxpayer's stock return under the National Industrial Recovery Act for the year ending June 30, 1933, they are without force for present purposes except as they are persuasive commentaries on the meaning of the language of § 215 (f) of the National Industrial Recovery Act which was carried forward into later revenue acts. Article 41 (d) of Treasury Regulations 64, published under the 1934 Act, declared that "First return means the first capital stock tax return filed by a corporation for its first taxable year," a definition which was continued in Article 44 of Regulations 64 (1936 ed.), under the corresponding § 105 of the Revenue Act of 1935. Article 44 of the latter regulation for the first time informed taxpayers that an effective declaration of value for the first tax year could not be made in a timely amended return, saying, "A subsequent return declaring a different value, even though filed before the expiration of the prescribed period, is therefore not acceptable under the statute."

On the argument the Commissioner admitted that this ruling served no administrative or governmental convenience or purpose apart from compliance with the supposed command of the statute. There is thus a complete absence of those reasons which ordinarily lead courts to give persuasive force to an administrative construction and which justify their acceptance of it in preference to their own. The regulations have not been consistent in their interpretation of the statute and do not embody the results of any specialized departmental knowledge or experience. Cf. *Brewster* v. *Gage,* 280 U. S. 327, 336; *Estate of Sanford* v. *Commissioner, ante,* p. 39. No one, not even the Government, will be prejudiced by its rejection, and as we have said the construction flies in the face of the purposes of the statute and the plain meaning of its words. Judicial obeisance to administrative action cannot be pressed so far.

It is said that Congress, by the change of the language of the capital stock provisions adopted in the 1938 Revenue Act has attributed to the earlier statute the same meaning as that ascribed to it by the administrative construction. It is familiar doctrine that Congress, by reenacting a section of the Revenue Act without change, approves and adopts a consistent administrative construction of it. But here the argument is that by amendment of the statute, which would preclude such a construction in the future, Congress has also declared that the departmental construction was that intended by the earlier Congress which enacted the statute.

Section 601 of the 1938 Act, 52 Stat. 447, 565, in addition to other changes in the capital stock and excess profits tax provisions, prescribed that the "adjusted declared value" should be determined with respect to three year periods, beginning with the year ending June 30, 1938, and denominated the first year of each period

a "declaration year." Section 601 (f) (2) provided that
the declared capital stock value for purposes of the tax,
shall be the value as declared by the corporation "in its
return for such declaration year (which declaration of
value cannot be amended)." Since, under the new legis-
lation, the return for the declaration year for each three-
year period and not that for the first tax year of the
taxpayer is controlling, there was no occasion for repeat-
ing the phrases "first year" and "first return" which had
appeared in the earlier legislation and the new section
dropped from the statute the words which had given rise
to the earlier administrative construction. This was
pointed out by the house committee report recommending
the amendment,[2] stating that the change would serve to
permit the taxpayer to amend its declaration by timely
amendment of the return for the declaration year and
adding, "denial of all opportunity for correction appears
unduly restrictive."

It must be assumed that Congress was aware through
its committees of the change in the regulations which in
1936 had construed the statute as precluding an effective
declaration in a timely amended return, and of the litiga-
tion then pending in this case and in *Glenn* v. *Oertel Co.*,

[2] "The new section also alleviates the rigid provision of section
105 (f) of the 1935 act that the valuation shall be as declared by the
corporation in its 'first' return. Errors of calculation or other errors
sometimes occur in first returns, and denial of all opportunity for cor-
rection appears unduly restrictive. Accordingly, the word 'first' as
it appears the second time in section 105 (f) of the 1935 act, as
amended, is eliminated from the corresponding language appearing
in subsection (f) (2) of the new section. This will serve to give a
corporation the right, so long as it acts within the time allowed for
filing its return (including the last day of any extension period) for
the year for which a declaration of value is required, to file subse-
quent returns for that year showing a different valuation, the valua-
tion shown by the last timely return being binding." H. Rept. 1860,
Committee on Ways and Means, 75th Cong., 3rd Sess., p. 62.

*supra,* in which the departmental construction had been challenged as "unduly restrictive." In the face of the legislative expression of dissatisfaction with the earlier statute as construed, Congressional purpose to declare that such was the intended meaning is not to be inferred merely from the fact that the amendment providing for the future said nothing as to the past. If we are to draw inferences it would seem as probable that Congress was content to leave the problems of the past to be solved by the courts where they were then pending, rather than to preclude their solution there. Action so ambiguous in its implications as to the past is wanting in that certainty and evident purpose which would justify its acceptance as a legislative declaration of what an earlier Congress had intended rather than an effort to make clear that which had been rendered dubious by unwarranted administrative construction. Cf. *Jordan* v. *Roche,* 228 U. S. 436, 445; *Helvering* v. *New York Trust Co.,* 292 U. S. 455; *Noble* v. *Oklahoma City,* 297 U. S. 481, 492. Retroactive declarations of legislative intent, prejudicial to those who have acted under an earlier statute whose construction seems clear, it would seem, ought not to be implied more than the legislative intention to give retroactive operation to a new statute. See *Hassett* v. *Welch,* 303 U. S. 303, 314 and cases cited; cf. *Noble* v. *Oklahoma City, supra.*

*Reversed.*