**AMERICAN VISCOSE CORPORATION v. ROTHENSIES, Collector of Internal Revenue.**

**No. 148.**

District Court, E. D. Pennsylvania.

July 22, 1940.

Drinker, Biddle & Reath and Charles J. Biddle, all of Philadelphia, for plaintiff.

Thomas J. Curtin, Asst. U.S. Atty., and Edward A. Kallick, U.S. Atty., both of Philadelphia, Pa., and Paul S. McMahon, Sp. Asst. Atty. Gen., for defendant.

KIRKPATRICK, District Judge.

This is a suit to recover capital stock taxes paid for the year ending June 30, 1935, under the provisions of Sec. 701 of Title V of the Revenue Act of 1934, 26 U.S. C.A. Int. Rev. Acts, page 787. The amount which the plaintiff seeks to recover is $131,-923.00—a sum made up of three items of capital stock tax paid for the year 1935 by the plaintiff and by two other affiliated corporations, whose assets, including their claims for returns, were acquired by the plaintiff prior to bringing this suit. The basis of the plaintiff's cause of action is that the section of the statute under which the tax was assessed and collected is unconstitutional, being in contravention of the Fifth Amendment.

The defendant has filed a motion to dismiss, and in his argument makes two points, first, that the complaint does not show that the plaintiff has sustained any direct injury as the result of the enforcement of the statute, and hence, under the rule of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078, is not in a position to challenge the constitutionality of the act, and, second, that the act is constitutional. The second question only will be considered.

Whether or not the capital stock tax of Sec. 701 and the excess profits tax of Sec. 702, 26 U.S.C.A. Int. Rev. Acts, page 789, were intended as a self-adjusting (and inferentially, unitary) levy, which was the view taken by the Court of Claims in Allied Agents, Inc., v. United States, 26 F. Supp. 98, it must be conceded that they are at least closely related "adjuncts," one of the other. It is the fact that the amount of neither can be ascertained until a valuation of the taxpayer's capital has been made which is the same for both taxes and for fixing which only one method is prescribed. This method of fixing the value of the capital is the point at which the constitutionality of the capital stock tax is attacked, and, in examining that question, one cannot be wholly oblivious of the provisions of Sec. 702.

The scheme of taxation set up by the two sections (see note 1) is that the taxpayer must make its own valuation of its capital

stock, which declared valuation is accepted, without challenge or revision, as the basis by which the amounts of both taxes are arrived at—the capital stock tax of Sec. 701 at the rate of one-tenth of one per cent. of the declared value, and the excess profits tax at the rate of 5 per cent. of such portion of its income as is in excess of 12½ per cent. of the declared value.

For the taxable year June 30, 1934 to June 30, 1935, the declaration of value had to be made, and was made by this taxpayer, before July 31, 1935. The law, Sec. 701 (f) (as applicable to this particular plaintiff) required the value to be declared as of December 31, 1933, subject to certain adjustments for subsequent additions to or subtractions from capital. It will not be necessary to go into the adjustment features of the act and their modifications by later statutes, but, in general, it may be said that the taxpayer was and still is to a considerable extent bound for future years (now two) by his original declaration.

The challenge to the constitutionality of the act as it applies to the capital stock tax is chiefly based upon the argument that, although on its face it is an ad valorem tax, it is actually imposed, not on actual value, but on an arbitrary valuation which the taxpayer may fix at any figure which it chooses regardless of the fact.

It is true that the tax may be based upon a wholly arbitrary valuation, but it is also true that it need not be. There is nothing in the act which stands in the way of the taxpayer, which has more accurate knowledge of its own business than anyone else, declaring what it finds or believes to be the actual value of its own capital. Indeed, the internal evidence from the statute itself and the past legislative history of the taxes imposed indicate that it was the intention of Congress that it should do so. Hence, the argument of the plaintiff that the scheme of taxation forces the taxpayer against its will to play a guessing-game against the government, as though it were compelled to draw numbers from a hat and be taxed upon the figure which it draws, is not wholly applicable. Logically, the real complaint (not altogether captious) against the act is that, under it, a taxpayer, being given an opportunity to guess at the amount of its future income in order to save itself tax, may, and frequently does, make a wrong guess, and so may be compelled to pay more tax than it would had it either (a) correctly forecast its earnings, or (b)

not tried to guess at all but confined itself to actualities and made a true and accurate return of the real value of its capital. But even so, the plaintiff argues, it is under compulsion, because the economic consequences to it by way of large excess profits tax may be disastrous, and because competition with others which are doing the same thing leaves it no choice but to ignore actual values and base its declared valuation on a guess as to its future profits, just as, in conducting its business, it must be continually guessing at future variables, such as the cost of raw materials. This, it says, is taking its property without process of law.

Undoubtedly there will be years where the taxpayer will pay a heavy excess profits tax, which might be saved had it foreseen its unexpected prosperity and inflated its declared valuation in order to meet it. But it has not been demonstrated to me and I have no reason to think that in the long run, year after year, the taxpayer who places a true valuation upon its capital will not come out as well or better than those who disregard it—with the exception, perhaps, of a few very astute or very fortunate prognosticators of the future.

The constitutionality of the act has been upheld in a very thoroughly considered opinion in the Allied Agents case, supra, and in a number of unreported cases, most of which were decided by District Courts without opinion. In the Allied Agents case, certiorari was denied by the Supreme Court, 308 U.S. 561, 60 S.Ct. 72, 84 L.Ed. 471 and while no conclusions may be drawn from that, it is at least worthy of note that, on the same day, the court granted certiorari to review the decision of the Circuit Court of Appeals for the Fifth Circuit in Haggar Co. v. Commissioner, 104 F.2d 24, (opinion reported 308 U.S. 389, 60 S.Ct. 337, 84 L.Ed. 340). This latter case had to do with the right of a taxpayer, which had made a declaration of value, to amend it before the time for filing its return had expired. The opinion does not mention constitutionality, but it faintly illumines some of the phases of that question as presented by the arguments of the parties in the case now before this court.

Although the constitutionality of the capital stock section of the act was not directly challenged in the Haggar case, the taxpayer did make the argument that, unless the right to amend was accorded it, the tax imposed would be so arbitrary and un-

related to reality as to contravene the Fifth Amendment. Curiously enough, the reason which it had assigned before the Commissioner for the allowance of its proposed amendment was that the erroneous return had been made "before Taxpayer was aware that excess profits taxes would be computed upon such purported 'declared valuation.'" In other words, the taxpayer did not complain that it was being prevented by its mistake from returning the actual value of its capital or say that it desired to do so, but merely wanted to be allowed to gamble on the future with its eyes open. The government challenged the right of the taxpayer to raise the question of constitutionality at all.

Mr. Justice Stone ignored the constitutional question, and his opinion only remotely, if at all, suggests the thought expressed in the foregoing part of this opinion and found in the Allied Agents decision—that the act was intended to obtain a true and accurate valuation of capital as a basis for both taxes. He said (page 394 of 308 U.S., page 340 of 60 S.Ct., 84 L.Ed. 340), "Congress thus avoided the necessity of prescribing a formula for arriving at the actual value of capital for the purpose of computing excess profits taxes, which had been found productive of much litigation under earlier taxing acts * * *. At the same time it guarded against loss of revenue to the Government through understatements of capital, by providing for an increase in excess profits tax under § 216 ensuing from such understatements."

 'All this suggests that, had the question been dealt with, the act might have been sustained, even in the absence of any discernible purpose on the part of Congress to arrive, conveniently, promptly, and with fairness to the taxpayer, at the real value of its capital. But I think it unnecessary to go to that extent. In construing "declared value" there is no reason why it should be read as though it were merely "taxpayer's declaration," and ignore the word "value" altogether. That Congress expected the adjusted declared value to be an appraisement by the taxpayer or, at least, to bear some relation to actual value, is the conclusion which one would naturally draw from the fact that Sec. 701 (f) requires that it shall be declared "as of" certain specified dates. As was said in the Allied Agents case, Congress asked the taxpayer to fix the value, gave it an inducement to

make it fair and reasonable, and waived the right to revise it.

In view of what appears to me to be the sounder reasoning and the unquestioned weight of authority, it is concluded that Sec. 701 (a) of the Revenue Act of 1934, is constitutional and a valid exercise of the taxing power.

The motion to dismiss is granted and the complaint dismissed.

The sections of the statute involved are as follows:

"Section [§] 701. (a) For each year ending June 30, beginning with the year ending June 30, 1934, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock. * * *

"(f) For the first year ending June 30 in respect of which a tax is imposed by this section upon any corporation, the adjusted declared value shall be the value, as declared by the corporation in its first return under this section (which declaration of value cannot be amended), as of the close of its last income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section (or as of the date of organization in the case of a corporation having no income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section). For any subsequent year ending June 30, the adjusted declared value in the case of a domestic corporation shall be the original declared value plus (1) the cash and fair market value of property paid in for stock or shares, (2) paid in surplus and contributions to capital, (3) its net income, (4) the excess of its income wholly exempt from the taxes imposed by Title I over the amount disallowed as a deduction by section 24 (a) (5) of such title, and (5) the amount of the dividend deduction allowable for income tax purposes, and minus (A) the value of property distributed in liquidation to shareholders, (B) distributions of earnings or profits, and (C) the excess of the deductions allowable for income tax purposes over its gross income; adjustment being made for each income-tax taxable year included in the period from the date as of which the original declared value was declared to the close of its last income-tax taxable year ending at or prior to the close

of the year for which the tax is imposed by this section. The amount of such adjustment for each such year shall be computed (on the basis of a separate return) according to the income tax law applicable to such year. * * *"

"Section [§] 702. (a) There is hereby imposed upon the net income of every corporation, for each income-tax taxable year ending after the close of the first year in respect of which it is taxable under section 701, an excess-profits tax equivalent to 5 per centum of such portion of its net income for such income-tax taxable year as is in excess of 12½ per centum of the adjusted declared value of its capital stock * * * as of the close of the preceding income-tax taxable year * * * determined as provided in section 701. * * *"