David Dale HELLEBRAND and Jean Marie Hellebrand, Individually, and on Behalf of the Estate of Lacey Marie Hellebrand, Deceased, Petitioners–Appellees,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent–Appellant.

No. 92–5068.

United States Court of Appeals, Federal Circuit.

July 23, 1993.

David R. Weiner, Law Offices of Windle Turley, P.C., Dallas, TX, argued for petitioners-appellees. With him on the brief was Thomas William Arbon.

John L. Euler, Atty. Dept. of Justice, Washington, DC, argued for respondent-appellant. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., Helene M. Goldberg and Mary Hampton Mason, Attys. Of counsel was Nancy R. Gaines.

Before NIES, Chief Judge, NEWMAN, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

The Secretary of the Department of Health and Human Services (Respondent) appeals from the judgment of the United States Claims Court[1] awarding compensation to the parents and the estate of Lacey Marie Hellebrand (Petitioners) under the National Childhood Vaccine Injury Act of 1986, Pub.L. No. 99–660 (Title III), 1986

---

1. The Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516 (1992), changed the name of the United States Claims Court to the "United States Court of Federal Claims." Unless the context requires otherwise, we refer to the trial court by the name which it had while this matter was pending before it.

U.S.C.C.A.N. (100 Stat.) 3743, 3755 (codified as amended at 42 U.S.C. §§ 300aa–1 to 300aa–34 (1988 & Supp.1990) and at 42 U.S.C.A. §§ 300aa–1 to 300aa–34 (West 1991 & Supp.1993)) (Vaccine Act or Act). That judgment followed the December 19, 1991 decision of the Claims Court which reversed the July 25, 1991 decision of the special master denying compensation under the Act for the death of Lacey Hellebrand. *Helleb-rand v. Secretary, Dep't of Health & Human Servs.*, 24 Cl.Ct. 756 (1991). Because the Claims Court erred in construing the Act, we reverse the court's judgment and remand the case to the Court of Federal Claims, with instructions to enter judgment in favor of Respondent in accordance with the decision of the special master.

## I. BACKGROUND

The pertinent facts are not in dispute. Lacey Hellebrand was born on December 31, 1983, by a routine Caesarean section. Her birth followed an uneventful pregnancy. Beginning in her second month, she was given phenobarbital (trade name "Levsin PB") for colic. On March 7, 1984, between 3:00 and 4:30 p.m., she received her first diphtheria-tetanus-pertussis (DTP) vaccination. She cried hard and kicked for about two hours after the vaccination. At about 7:30 p.m., she was given a dose of Levsin PB, after which she calmed down and fell asleep. She awoke at 9:30 p.m. and took some, but not all, of her bottle and cereal. Thereafter, around midnight, she was seen awake in her crib and not crying. However, she appeared drowsy and dazed. The next morning, between 6:00 and 6:30, she was found dead. The precise cause of Lacey Hellebrand's death was never determined. The medical examiner listed the cause of death as bronchopneumonia. An autopsy later classified her death as "Sudden Infant Death Syndrome" (SIDS).[2] In due course, Petitioners sought compensa-

tion for Lacey Hellebrand's death pursuant to the provisions of the Vaccine Act.

## II. DISCUSSION

### A. *The Statutory Scheme*

The Vaccine Act established the "National Vaccine Injury Compensation Program . . . under which compensation may be paid for a vaccine-related injury or death." 42 U.S.C. § 300aa–10(a) (Program). Section 13(a) of the Act sets forth the general rule for determining whether a petitioner is entitled to compensation under the Program. It provides in pertinent part as follows:

(a) **General Rule**

(1) Compensation shall be awarded under the Program to a petitioner if the special master or court finds on the record as a whole—

(A) that the petitioner has demonstrated by a preponderance of the evidence the matters required in the petition by section 300aa–11(c)(1) of this title, and

(B) that there is not a preponderance of the evidence that the illness, disability, injury, condition, or death described in the petition is due to factors unrelated to the administration of the vaccine described in the petition.

42 U.S.C. § 300aa–13(a). Thus, the Act hinges recovery upon the ability of the petitioner to establish by a preponderance of the evidence the matters which section 300aa–11(c)(1) requires be included in a petition for compensation.[3]

To the extent relevant to this case, section 300aa–11(c)(1) provides in pertinent part as follows:

(c) **Petition content**

A petition for compensation under the Program for a vaccine-related injury or death shall contain—

---

**2.** SIDS is defined as the "sudden and unexpected death of an apparently healthy infant, typically occurring between the ages of three and five months and not explained by careful post-mortem studies." *Dorland's Illustrated Medical Dictionary*, 1644–45 (27th ed. 1988).

**3.** A proceeding for compensation under the Program is initiated by serving upon the Secretary of the Department of Health and Human Services and filing with the United States Court of Federal Claims a petition "containing the matter prescribed by [42 U.S.C. § 300aa–11(c)] . . . ." 42 U.S.C. § 300aa–11(a)(1).

(1) ... an affidavit, and supporting documentation, demonstrating that the person who suffered such injury or who died—

(A) received a vaccine set forth in the Vaccine Injury Table ...,

\*    \*    \*    \*    \*    \*

(C)(i) sustained, or had significantly aggravated, any illness, disability, injury, or condition set forth in the Vaccine Injury Table in association with the vaccine referred to in subparagraph (A) or died from the administration of such vaccine, and the first symptom or manifestation of the onset or of the significant aggravation of any such illness, disability, injury, or condition or the death occurred within the time period after vaccine administration set forth in the Vaccine Injury Table, or

(ii)(I) sustained or had significantly aggravated, any illness, disability, injury, condition not set forth in the Vaccine Injury Table but which was caused by a vaccine referred to in subparagraph (A)....

\*    \*    \*    \*    \*    \*

42 U.S.C. § 300aa–11(c)(1)(A), (c)(1)(C)(i), (c)(1)(C)(ii)(I).

The Vaccine Injury Table referenced in section 300aa–11(c)(1) (Table) is set forth at 42 U.S.C. § 300aa–14(a). The Table lists various injuries, disabilities, illnesses, or conditions which can result from the administration of certain vaccines. The Table also lists the time period in which "the first symptom or manifestation of onset or of the significant aggravation" of each such injury, disability, illness, or condition "is to occur after vaccine administration for purposes of receiving compensation under the Program." *Id.* For a DTP vaccination, the Table lists the following illnesses, disabilities, injuries, or conditions and respective time periods after vaccine administration for their first symptom or manifestation of onset or of significant aggravation:

A. Anaphylaxis or anaphylactic shock—24 hours

B. Encephalopathy (or encephalitis)—3 days

C. Shock-collapse or hyporesponsive collapse—3 days

D. Residual seizure disorder—3 days

E. Any acute complication or sequela (including death) of an illness, disability, injury, or condition referred to above which illness, disability, injury, or condition arose within the time period prescribed—time period not applicable.

42 U.S.C. § 300aa–14(a)I.

Another part of section 300aa–14 contains "qualifications and aids to interpretation [which] shall apply to the Vaccine Injury Table...." 42 U.S.C. § 300aa–14(b). Pertinent to this case is the aid to interpretation which relates to a shock-collapse or a hypotonic-hyporesponsive collapse. It provides as follows:

A shock-collapse or a hypotonic-hyporesponsive collapse may be evidenced by indicia or symptoms such as decrease or loss of muscle tone, paralysis (partial or complete), hemiplegia or hemiparesis, loss of color or turning pale white or blue, unresponsiveness to environmental stimuli, depression of consciousness, loss of consciousness, prolonged sleeping with difficulty arousing or cardiovascular or respiratory arrest.

42 U.S.C. § 300aa–14(b)(1). With the statutory scheme before us, we can now turn to the decisions of the special master and the Claims Court.

### B. *The Decision of the Special Master*

Under the provisions of section 300aa–11(c)(1) of the Act quoted above, a petitioner seeking compensation under the Program may establish entitlement in either of two ways. First, a petitioner may recover when an injury listed in the Table begins to manifest itself within the time period specified in the Table for the vaccine in question. 42 U.S.C. § 300aa–11(c)(1)(C)(i). In such a case, causation is presumed. *Bunting v. Secretary of Dep't of Health & Human Servs.*, 931 F.2d 867, 872 (Fed.Cir.1991). Second, for injuries not listed in the Table, the Act authorizes recovery if the petitioner proves actual causation, or causation-in-fact. 42 U.S.C. § 300aa–11(c)(1)(C)(ii)(I). *Munn v.*

*Secretary of Dep't of Health & Human Servs.*, 970 F.2d 863, 865–66 (Fed.Cir.1992); *Hines v. Secretary of Dep't of Health & Human Servs.*, 940 F.2d 1518, 1524–25 (Fed. Cir.1991).

After the petition in this case was filed in the Claims Court, it was, in due course, assigned to a special master. *See* 42 U.S.C. § 300aa–11(a)(1). Before the special master, Petitioners contended that Lacey Hellebrand had died from either anaphylactic shock or hypotonic-hyporesponsive collapse (HHE), Table injuries IA and IC, respectively. *See* 42 U.S.C. § 300aa–14(a)I. As seen above, both of these injuries are generally compensable under the Program when they occur within seventy-two hours of vaccination. In the alternative, Petitioners argued that Lacey Hellebrand had died from some other injury caused by the DTP vaccination. Thus, Petitioners asserted both a Table claim, 42 U.S.C. § 300aa–11(c)(1)(C)(i), and a causation-in-fact claim, 42 U.S.C. § 300aa–11(c)(1)(C)(ii)(I).

Upon reviewing the evidence presented to him at a hearing, the special master found an absence of symptoms of either anaphylactic shock or HHE. He therefore concluded that Petitioners had failed to prove by a preponderance of the evidence that "Lacey Hellebrand suffered an on-table injury after her DTP vaccination and prior to her death." Special Master's Op. at 6. The special master also concluded that Petitioners had failed to prove by a preponderance of the evidence that "the DTP vaccination was in fact the cause of [Lacey Hellebrand's] death." Special Master's Op. at 7. In rejecting the theory of causation-in-fact which had been advanced by Petitioners' medical expert, the special master stated: "I cannot come to the conclusion that a temporal relationship to an unexplained death alone yields causation in fact." Special Master's Op. at 6–7. Having concluded that Petitioners had failed to establish either a Table claim or a causation-in-fact claim, the special master held that Petitioners were ineligible for compensation under the Program. Special Master's Op. at 7.

**C. The Decision of the Claims Court**

Following the special master's decision, Petitioners timely moved to have the Claims Court review the decision. *See* 42 U.S.C. § 300aa–12(e)(1). After considering the case, the Claims Court reversed the special master's decision. The court stated that "all of the special master's findings of fact have been recognized and accepted." *Hellebrand*, 24 Cl.Ct. at 763. Nevertheless, the court held, "[t]he SIDS death within the 72 hour statutory period of Lacey Marie Hellebrand was an on-Table injury eligible for compensation under the Program." *Id.* In so holding, the court rejected "as not in accordance with law" the determination of the special master that Petitioners had failed to establish that prior to her death Lacey Hellebrand had suffered a Table injury. *Id.* The court did not disturb the determination of the special master that Petitioners had failed to make out a case of causation-in-fact with respect to Lacey Hellebrand's death.

The Claims Court recognized that the special master had interpreted the Act as requiring that, as far as their Table claim was concerned, petitioners show that Lacey Hellebrand's death was a sequela of one of the listed Table injuries. *Id.* In the view of the Claims Court, the special master's error of law lay in his failure to give proper consideration to the provision of the aids to interpretation which is applicable to HHE.[4] As seen above, that provision lists "cardiovascular or respiratory arrest" among the "indicia or symptoms" which may be evidence of HHE. 42 U.S.C. § 300aa–14(b)(1). Starting from the proposition that "[a]ll provisions [of a statute] are to be considered, and the statute as a whole is to be construed so as to give meaning to all of its parts," the Claims Court determined that "[e]ach of the items [in the HHE provision of the aids to interpretation] has utility for the purposes of determination of a Table injury." 24 Cl.Ct. at 762. From this point, the court reasoned that, in a situation where the cause of death is unknown, the cardiovascular or respiratory arrest item

4. The Claims Court expressed no disagreement with the special master's rejection of Petitioners' claim of anaphylactic shock.

supersedes the other items in the HHE provision of the aids to interpretation. *Id.* Accordingly, the court concluded, because Lacey Hellebrand died of an unknown cause (SIDS) and because it was undisputed that she had suffered cardiovascular or respiratory arrest, the special master should have held that she had suffered a Table injury. *Id.* The Claims Court read the special master's decision as erroneously eliminating "the cardiovascular or respiratory arrest item from the determination of an on-Table injury...." *Id.* The court stated:

> It is not for the court to delete [the factor of cardiovascular or respiratory arrest] on the ground that it may lead to a medically absurd result, or may authorize compensation for all SIDS deaths that occur within 72 hours after vaccination with DTP.

24 Cl.Ct. at 762. Thus, the Claims Court held that Lacey Hellebrand's SIDS death within three days of vaccination constituted HHE as a matter of law.

### D. *Analysis*

■ In urging us to reverse the decision of the Claims Court, Respondent argues that under the Vaccine Act, "death alone following vaccination is insufficient to establish a presumptive claim for vaccine compensation." Respondent's brief, p. 13. Rather, according to Respondent, death must be proved to have been a sequela to one of the four listed DTP Table injuries. *Id.* Moreover, Respondent contends, the presence of cardiovascular or respiratory arrest alone does not, "as a matter of law, satisfy a petitioner's burden of establishing the occurrence of any of these injuries." *Id.* In arguing for affirmance of the Claims Court's decision, Petitioners rely upon a line of reasoning different from that used by the court. Specifically, they contend that section 300aa–11(c)(1)(C)(i) of the Act, which is under the part of the statute which is titled **"Petition content"** and which is quoted above, evidences "an intent [on the part of Congress] to compensate all deaths that occur within the *time period* set forth in the Table." Petitioners do not challenge the Claims Court's affirmance of the special master's denial of their causation-in-fact claim.

The Vaccine Act provides that the Court of Federal Claims may reverse the decision of a special master if that decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 42 U.S.C. § 300aa–12(e)(2)(B). We review de novo the Claims Court's determination as to whether the special master's decision was any of these. *Cucurus v. Secretary of Dep't of Health & Human Servs.*, 993 F.2d 1525, 1527 (Fed.Cir.1993); *Hines*, 940 F.2d at 1523–24. In this case, the Claims Court accepted the special master's findings of fact, but then reversed his decision on the ground that he had erred in his application of the HHE provision of the aids to interpretation section of the Act. Thus, the case presents for our de novo review an issue of statutory interpretation, which is a question of law. *See Munn*, 970 F.2d at 870 n. 10.

"It is a general rule of statutory construction that where Congress has clearly stated its intent in the language of a statute, a court should not inquire further." *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 788 (Fed.Cir.), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988) (citations omitted). In the case of a Table claim based upon death following a DTP vaccination, Congress has made its intent very clear. In order for a petitioner to recover for a death which follows a DTP vaccination, based on a Table claim, two things must be established by a preponderance of the evidence. *First,* the petitioner must show that one of the four injuries or conditions listed in the Table occurred within the time period specified in the Table for that injury or condition. *Second,* the petitioner must show that death occurred as a sequela of that injury or condition. That these two requirements must be met is demonstrated by the way in which the part of the Table which covers DTP vaccinations is structured. As seen above under *The Statutory Scheme,* the Table first lists, in paragraphs A through D, four injuries or conditions and for each such injury or condition, a time period for first onset or manifestation of such injury or condition. *See* 42 U.S.C. § 300aa–14(a)I. Then, the Table establishes in paragraph E that there also may be recovery under the Program for "[a]ny acute complication or sequela (including

death) of an illness, disability, injury, or condition referred to above which illness, disability, injury, or condition arose within the time period prescribed." *Id.* The arrangement of the words in paragraph E renders the meaning of the paragraph clear. Recovery for a death following a DTP vaccination based on a Table claim is conditioned upon the death being a sequela of an illness or condition listed in paragraph A, B, C, or D "which arose within the time period prescribed" in the Table for that illness or condition.

Thus, in order for Petitioners to recover for Lacey Hellebrand's death based on a Table claim, they had to establish two things by a preponderance of the evidence. *First,* they had to show that, within 72 hours of receiving her DTP vaccination, she suffered HHE. Second, they had to show that her death was a sequela of HHE. The special master found that Petitioners had failed to establish that Lacey Hellebrand had suffered HHE. Accordingly, he denied their claim based upon a Table injury. That approach was correct.

As seen above, on review, the Claims Court looked to the provision of the aids to interpretation section of the Act which relates to HHE and determined that, in a situation where the cause of death is unknown, the cardiovascular or respiratory arrest item supersedes the other items in the provision. From that, the court reasoned that, because Lacey Hellebrand died of an unknown cause (SIDS) and because it was undisputed that she had suffered respiratory or cardiovascular arrest, the special master should have concluded that she had suffered a Table injury. This was error for two reasons.

First, the Claims Court's analysis ignores the plain language of the Act, discussed above. In view of the clear wording of the Table, once the court accepted the finding of the special master that Petitioners had failed to establish that Lacey Hellebrand had suffered HHE, as a matter of law, the case was over as far as the Table claim was concerned. Petitioners had failed to meet their burden of proof. Since the court agreed with the special master's conclusion as far as the causa-tion-in-fact claim was concerned, it should have affirmed the special master's decision.

Second, the Claims Court's analysis misconstrues the HHE provision of the aids to interpretation section of the Act. As seen above, that provision states, in pertinent part, that HHE "may be evidenced by indicia or symptoms" such as, among other things, "cardiovascular or respiratory arrest." 42 U.S.C. § 300aa–14(b)(1). Use of the permissive "may be evidenced" rather than mandatory language such as "shall be evidenced" is significant. It compels the conclusion that, while respiratory or cardiovascular arrest may well be the most dramatic symptom of HHE, Congress did not intend that there be any circumstance in which respiratory or cardiovascular arrest automatically would serve to establish the presence of HHE. If Congress had so intended, we believe that it would have made its intention clear in the statute and would not have used language which conveys a contrary intent. *See, e.g., United States v. International Business Mach. Corp.,* 892 F.2d 1006, 1009 (Fed.Cir. 1989) ("Had Congress intended to make the exemptions permanent, it knew how: it could and we believe would have used words of futurity . . . .").

Neither does the language of the HHE provision of the aids to interpretation section support the Claims Court's conclusion that when the cause of death is unknown, the cardiovascular or respiratory arrest item supersedes the other items in the provision. Quite simply, the words necessary to support such a conclusion are not present in the provision. Again, we believe that if Congress had intended the conclusion reached by the Claims Court, it would have used the appropriate language. *IBM, supra.*

Finally, as noted above, the Claims Court stated that it was not for it to "delete [the cardiovascular or respiratory arrest item] on the ground that it may lead to a medically absurd result, or, may authorize compensation for all SIDS deaths that occur within 72 hours after vaccination with DTP." *Hellebrand,* 24 Cl.Ct. at 762. It is a principle of statutory interpretation, however, that a court should seek to avoid construing a statute in a way which yields an absurd result

and should try to construe a statute in a way which is consistent with the intent of Congress. *See Best Power Technology Sales Corp. v. Austin,* 984 F.2d 1172, 1175 (Fed. Cir.1993) (citing *Haggar Co. v. Helvering,* 308 U.S. 389, 394, 60 S.Ct. 337, 339, 84 L.Ed. 340 (1940)) ("All statutes must be construed in light of their purpose. A reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with legislative purpose."). The decision of the Claims Court is at odds with this principle. We should not accept an approach to the aids to interpretation section of the Act which "may lead to a medically absurd result." Additionally, various provisions of the Act make it clear that Congress intended that special masters have wide latitude in adjudicating claims under the Program.[5] The Claims Court's reading of the aids to interpretation section as requiring a special master to mechanically find that an HHE occurred in any SIDS death plainly is inconsistent with such an intent.

As already noted, Petitioners argue that we can affirm on the basis of a rationale different from that used by the Claims Court. They contend that section 300aa–11(c)(1)(C)(i) of the Act supports the court's holding that all SIDS deaths within 72 hours of vaccination are compensable under the Program as Table injuries. In making this argument, they point to the part of that section which provides in pertinent part that

> [a] petition for compensation under the Program for a vaccine—related injury or death shall contain—

> ... an affidavit, and supporting documentation, demonstrating that *the person* who suffered such injury or *who died*

> \*   \*   \*   \*   \*   \*

> ... sustained, or had significantly aggravated, any illness, disability, injury,

or condition set forth in the Vaccine Injury Table in association with [a vaccine referred to in the Vaccine Injury Table] *or died from the administration of such vaccine, and* the first symptom or manifestation of the onset or of the significant aggravation of any such illness, disability, injury, or condition or the *death occurred within the time period after vaccine administration set forth in the Vaccine Injury Table....*

42 U.S.C. § 300aa–11(c)(1)(C)(i) (emphasis added).

According to Petitioners, the language emphasized above compels the conclusion reached by the Claims Court. We cannot agree. It is true that, standing alone, the quoted language may be said to lend itself to such a conclusion. However, the quoted language does not stand alone. It appears in a section of the Act which both refers to, and operates in conjunction with, the "Vaccine Injury Table." A statute is to be construed in a way which gives meaning and effect to all of its parts. *United States v. Nordic Village, Inc.,* —— U.S. ——, ——, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992) ("settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect"); *Spruill v. Merit Sys. Protection Bd.,* 978 F.2d 679, 690 (Fed. Cir.1992). Petitioners' argument fails to do this because it considers the quoted language alone without reference to the Table. In addition, for the reasons discussed above in connection with the decision of the Claims Court, Petitioners' argument yields a result (compensation for all SIDS deaths occurring within 72 hours of vaccination) which is at odds with the plain language of the Act. The argument must be rejected.

### CONCLUSION

For the foregoing reasons, the judgment entered by the Claims Court in favor of

---

5. See 42 U.S.C. § 300aa–13(b)(1)(A) (listing the kinds of medical reports and other evidence to be considered in connection with a claim for compensation under the Program, but stating that these are not binding on the special master or the court) and (b)(1)(B) (the special master may find an onset of injury within the specified period even absent a recording in the medical records,

if proved by a preponderance of the evidence); § 300aa–12(d)(3)(B) (stating (i) that the special master may require such evidence, information, and testimony and may conduct such hearings as are "reasonable and necessary," and (ii) that the special master controls discovery); and § 300aa–13(A)(1) (special master's findings are based "on the record as a whole.").

Petitioners is reversed. The case is remanded to the Court of Federal Claims, which is directed to enter judgment for Respondent in accordance with the decision of the special master.

## COSTS

Each side shall bear its own costs.

***REVERSED AND REMANDED WITH INSTRUCTIONS.***

NEWMAN, Circuit Judge, concurring in the judgment.

This is not the first case in which an infant's death shortly after the administration of DPT vaccine has been held by this court to be uncompensable because the cause of death was medically "unknown". To that extent the holding of the panel majority is in accord with our precedent, and therefore I must concur in the judgment. However, I believe that this court has placed too facile a gloss on the analysis, and in so doing has incorrectly applied the statute.

Lacey Marie Hellebrand died no less than seven and no more than fifteen hours after the administration of the DPT vaccine. The time of her death is not known with greater precision. She was previously healthy, and no cause of death was diagnosed. She was not observed during death, and it is not known whether she experienced hypotonic-hyporesponsive collapse (HHE) or any other Table injury before death. The Court of Federal Claims, relying on the General Rule of § 2113(a),[1] found that the requirements of the statute were met.

There is no dispute as to any of the facts. There was no evidence that Lacey's death was due to any factor "unrelated to the administration of the vaccine". § 2113(a)(1)(B). It is a leap of logic to conclude that there was no injury, whatever the cause, when there occurred the most dramatic of injuries:

death. The fact of death establishes, beyond debate, that something went wrong with the life processes; in this case an undiagnosed something that was of absolutely certain occurrence.

Because Lacey was not seen while dying, HHE can not be proved, for it apparently leaves no markers for autopsy. However, in this case there were only a few hours between vaccine administration and death, and there was a total absence of evidence of any cause of death other than the vaccine. It is obvious that not all "temporal relationships" between vaccination and death are of equal probative strength. The special master erred in so holding and thereby refusing to consider the closeness or distance in time between the administration of the vaccine to Lacey and her death. A death that follows soon after administration of the vaccine, absent any discernible illness or other cause, weighs on the side of causation, the probative value depending on the elapsed time before death occurred and all other relevant evidence concerning the infant, its prior condition, any observed behavior, and other relevant information.

When an infant dies, it must be established by a preponderance of the evidence that the cause was the administration of the vaccine. 42 U.S.C. §§ 300aa–11, 13(a)(1)(B). When a Table injury is observed, the cause is presumed. But it is not required that the infant have suffered a Table injury. What is required is that the death was due to the vaccine.

The statutory intent is to provide compensation when it is more likely than not that the vaccine was the culprit. See 42 U.S.C. § 300aa–13(a). The fact that a physician at the time was unable to diagnose the cause of death does not of itself defeat compensation. The appropriate analysis is to determine whether, on the particular facts of the case,

---

1. **42 U.S.C. § 300aa–13(a) General Rule**
   (1) Compensation shall be awarded under the Program to a petitioner if the special master or court finds on the record as a whole—
   (A) that the petitioner has demonstrated by a preponderance of the evidence the matters required in the petition by section 300aa–11(c)(1) of this title, and

(B) that there is not a preponderance of the evidence that the illness, disability, injury, condition, or death described in the petition is due to factors unrelated to the administration of the vaccine described in the petition.

the probability of cause and effect is such that it is more likely than not that the administration of the vaccine caused the death.

With the aid of statistical analysis it is possible to ascertain where the preponderance lies. The probability that an unvaccinated child of Lacey's age will suffer an unexplained death during any given period can be calculated, as can the probability that a child will die within a given time after inoculation. Applying standard techniques of medical statistics, it can readily be determined whether it is more likely than not that the death was caused by the vaccine. Such statistical evidence must be considered, along with all other relevant evidence. When as here the medical experts did not agree as to the cause of death, the methods of probability analysis can aid the decisionmaker in ascertaining whether the statutory requirement of causation has been met. Thus I would remand for determination, by statistical analysis of the relevant data, whether it was more likely than not that this particular undiagnosed infant death was due to the administration of the vaccine.