LOURIE, Circuit Judge,
dissenting in part.
While I join the portion of the majority’s opinion that dismisses Hall’s post-removal claims, I respectfully dissent from the majority’s decision to reverse the grant of summary judgment by the Court of Federal Claims. Contrary to the majority’s opinion, Hall was not “terminated from her employment for voluntary grand jury service,” Majority Op. at 1341; she was terminated for being absent without leave (“AWOL”). Therein lies the crux of this dispute.
Just as the right to trial by jury is the cornerstone of our nation’s justice system, jury service is one of the highest duties of citizenship. Jurors thus deserve our utmost commendation. Hall’s insubordinate behavior, however, does not merit such praise. As the facts of this case demonstrate, Hall exploited the California jury service system as a means of shirking another important civic obligation — her duties as a federal employee.
Hall’s employer, the Naval Criminal Investigative Service (“NCIS”) of the Department of the Navy, informed Hall in November 2002 that her position would be transferred from California to Washington, D.C., that December. Hall notified her supervisors that for personal reasons she would be unable to report for duty. Hall’s employer granted her five months of unpaid leave and requested that she report to work in Washington on July 14, 2003.
While on unpaid leave, and aware of the federal government’s practice of providing paid leave to employees serving on a jury, Hall completed a questionnaire in March 2003 to be considered for grand jury service in Ventura County, California. J.A. 206. Hall testified that submitting the questionnaire was entirely voluntary. J.A. 205. (“I voluntarily submitted the questionnaire.”). Despite receiving at least three e-mails from her then second-level *1348 supervisor, Claude Baldwin, regarding her upcoming move to Washington, Hall never once mentioned that she had volunteered for the grand jury pool.
On July 1, 2008, two weeks before she was scheduled to report for duty in Washington, Hall notified Baldwin via e-mail that “[sjtarting today” she would be serving a one-year term on the Ventura County Grand Jury — from July 1, 2003, through June 80, 2004. J.A. 207. Baldwin expressed to Hall his displeasure that she had accepted a voluntary one-year term on the grand jury. Baldwin also threatened to have Hall considered AWOL.
On July 30, 2003, Louis Beyer, the Assistant Director for Administration at NCIS, wrote to the Honorable Bruce Clark, the presiding judge of the Ventura County Grand Jury, requesting that Judge Clark release Hall from grand jury service “at the earliest possible date” on account of “an extensive backlog of critical work.” J.A. 251. In response, Judge Clark informed Beyer that that “Grand Jury service is completely voluntary” and that “the Court will approve any request by Mrs. Hall to resign from her duties on the Grand Jury.” J.A. 252. Judge Clark noted, however, that the Court would not release Hall from Grand Jury duty “against her expressed desire to continue her service.” Id. Judge Clark nonetheless pointed out that Hall’s failure to resign from her duties on the grand jury “could be grounds for disciplinary action” by NCIS. Id. Despite being “continuously aware that the [NCIS] did not want me to serve on the grand jury” throughout her service, J.A. 212, Hall never requested to resign from the grand jury, J.A. 210. Hall was granted paid leave for her first year of grand jury service, even though she served contrary to the wishes of her Navy employer.
Hall not only volunteered for a year of grand jury service against the express wishes of her employer, she did so again a year later. On May 26, 2004, Joseph Vann, then the Deputy Assistant Director for the Cyber Division at NCIS and Hall’s second-level supervisor, wrote to Hall directing her to report for duty in Washington no later than July 14, 2004. The letter also stated: “You are directed not to seek or accept appointment for an additional term on the Ventura County Grand Jury.” J.A. 254. Despite this clear directive, Hall responded to Vann on June 28, 2004— about two weeks before she was scheduled to report for duty — stating that she “will be serving a final year on the Ventura County Grand Jury beginning on July 1, 2004, and ending on June 30, 2005.” J.A. 261. Hall later testified that she “had the opportunity to say no” to the additional year of service, and that she “was not coerced to serve the following year.” J.A. 211. Hall’s letter, dated only two days before the end of her first term of grand jury duty, was the first time that she had informed anyone in her chain of command that she elected to extend her service for another year. J.A. 156.
Due to Hall’s failure to report for duty on July 14, 2004, she was considered AWOL from that date forward. Hall filed an action with the Office of Personnel Management (“OPM”), which denied her claim for court leave.
The statute that grants leave for federal employees to serve as jurors, 5 U.S.C. § 6322(a)(1), provides that a federal employee is entitled to paid leave “during a period of absence with respect to which he is summoned, in connection with a judicial proceeding, by a court or authority responsible for the conduct of that proceeding, to serve as a juror.” Id. (emphases added). That statutory provision should not, in my view, be stretched to cover Hall’s decision *1349 to freely volunteer for grand jury service contrary to the clear directive of her federal employer.
Hall’s arguments rest entirely on the fact that, after volunteering for grand jury service, she received a summons upon being selected. Despite testifying that she “was not coerced in any way to join the grand jury,” J.A. 205, Hall contends that she deserves the benefit of court leave pay because she was “summoned ... to serve” within the meaning of § 6322.
Section 6322 does not define “summoned,” and it is unclear whether this term encompasses only a compulsory summons or extends to a voluntary summons — that is, a summons that one volunteers to receive. The ordinary meaning of “summon,” “[t]o command (a person) by service of a summons to appear in court,” Black's Law Dictionary 1449 (7th ed.1999), does not resolve the matter. Accordingly, § 6322 is ambiguous as to whether “summoned ... to serve” applies to situations in which a federal employee freely volunteers to be summoned to serve on a jury.
When interpreting ambiguous statutory language, we consult the relevant legislative history. See Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 62, 125 S.Ct. 460, 160 L.Ed.2d 389 (2004). Originally enacted in 1940, the court leave statute was substantively amended in 1970 to include its present language, “summoned ... by a court ... to serve,” and to make court leave available not only to jurors but also to federal employees serving as witnesses in court. As the Court of Federal Claims held, and as Hall conceded at oral argument, “summoned ... by a court ... to serve” in § 6322(a) must have the same meaning as applied to subsection (a)(1), which applies to jurors, and subsection (a)(2), which applies to witnesses. See Hall v. United States, 99 Fed.Cl. 223, 229 (2011); Oral Arg. at 4:30, available at http://www.cafc.uscourts.gov/oral-argument-recordings/2011-5119/all.
It is therefore relevant that in discussing the addition of the provision relating to witness leave, the committee report of the Senate Committee on the Judiciary stated that an employee who volunteers would not qualify for court leave:
It should be emphasized that an employee would be entitled to witness leave only if he is summoned by the court or authority responsible for the conduct of the proceeding. The employee would not be entitled to leave if he just volunteered; he must be summoned .... What is intended is that the summons be an official request, invitation, or call, evidenced by an official writing.
S.Rep. No. 91-1371, at 8 (1970), 1970 U.S.C.C.A.N. 5014, 5019 (emphasis added). Similar concerns were expressed by members of the House of Representatives about employees “volunteering” to serve as a witness as “an easy way to get out of work for a few days,” Hearing Before the Subcomm. on Manpower and Civil Serv. of the Comm, on Post Office and Civil Serv. on H.R. 10217, a Bill to Amend Title 5, United States Code, to Grant Court Leave to Employees of the United States and the District of Columbia When Called as Witnesses in Certain Judicial Proceedings on Behalf of State and Local Governments, 91st Cong. 11 (1969) (statement of Rep. David Henderson, Vice Chair, H. Comm, on Post Office and Civil Serv.), and “as a subterfuge for missing work,” id. at 13 (statement of Rep. Richard White, Member, H. Comm, on Post Office and Civil Serv.).
In my view, the Court of Federal Claims rightly credited this persuasive evidence of Congress’s intent that “summoned ... by a court ... to serve” should exclude those employees who freely volunteer for a grand jury pool. Hall, 99 Fed.Cl. at 232. *1350 Hall, in contrast, points to no legislative history in support of her theory that Congress intended for any employee who freely volunteers to serve, contrary to the plain directive of her supervisor, to qualify for the benefit of paid court leave.
The majority holds that “summoned” in the context of jurors in § 6322(a)(1) is “unambiguous” and applies “when[ever] a court issues a summons, which requires the individual by the force of law to appear before the court,” Majority Op. at 1846 n. 7. Under the majority’s view, that term must be equally unambiguous in the context of witnesses in § 6322(a)(2), for one statutory term cannot have two distinct meanings. As noted, Hall sensibly agrees with the government that “summoned” in § 6322(a) must have the same meaning in both subsections (a)(1) and (a)(2). See Oral Arg. at 4:30; Br. Def.-Appellee United States, at 34-35.
If the majority’s opinion is to be read— as I believe it must — that “summoned” in § 6322(a) invariably means having received any court-issued summons, then the majority’s opinion necessarily abrogates those administrative decisions that interpret “summoned” flexibly to accommodate the limitations of the court leave system. See, e.g., In re Entitlement of Emp.-Defendant to Court Leave, 62 Comp.Gen. 87, 1982 WL 26713 (1982) (holding that court leave under § 6322 is not available to a federal employee who is summoned to appear as a defendant in the court action concerned); In re Pasake, 59 Comp.Gen. 290, 1980 WL 17976 (1980) (holding that court leave under § 6322 is not available to a federal employee who appears in court as a plaintiff in her own action); In re Court Leave, B-214719, 1984 WL 46229 (Comp.Gen. June 25, 1984) (holding that court leave under § 6322 is not available to a federal employee summoned to appear in juvenile court in her capacity as the juvenile’s parent as a party to the proceedings); In re Sweeney, B-201602, 1981 WL 24203 (Comp.Gen. Apr. 1, 1981) (applying Pasake, 59 Comp.Gen. 290, to deny court leave to a government employee appearing in court as a plaintiff).
Moreover, the majority’s opinion precludes OPM, under § 6322(c), from enacting regulations construing “summoned” to mean anything other than applying to all summonses, without qualification. The Supreme Court has held that “a precedent holding a statute to be unambiguous forecloses a contrary agency construction.” Nat’l Cable & Telecomms. Ass’n v. Brand X Internet Servs., 545 U.S. 967, 984, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005). Just as Hall should not receive the benefit of paid court leave, nor should a serial litigant who frequently appears in court by her own design. The majority’s opinion, however, opens the door to all such abuses of the court leave system. Under my view, on the contrary, the meaning of “summoned” is ambiguous, and OPM would not be foreclosed from prescribing reasonable regulations for administering the “summoned” provision of § 6322(a) as it applies to jurors and witnesses. Id. (“[A] court’s prior interpretation of a statute [may] override an agency’s interpretation only if the relevant court decision held the statute unambiguous.”); see also 5 U.S.C. § 6322(c).
Moreover, although OPM’s decision in Hall’s case is not binding on this court, it is worth noting that, in deciding whether Hall was entitled to court leave, OPM also denied Hall’s claim for court leave. Hall, File No. 05-0036 (Office of Pers. Mgmt. Jan. 12, 2006); J.A. 297-303. Like the Court of Federal Claims, OPM concluded that “summoned” in § 6322 was ambiguous and that the pertinent legislative history confirmed that only a compulsory *1351 summons to serve as a juror qualified an employee for court leave.
Finally, in construing a statute, it is important, as the Court of Federal Claims did, to use common sense. See, e.g., Haggar Co. v. Helvering, 308 U.S. 389, 394, 60 S.Ct. 337, 84 L.Ed. 340 (1940). Why would Congress have intended to enact a rule that entitles a government employee to shirk work over an extended period of time under the transparent expedient of purely elective service in furtherance of another public purpose?
I therefore conclude the Court of Federal Claims correctly denied Hall paid leave for grand jury service for which she freely volunteered against the express directive of her supervisors. Accordingly, I respectfully dissent.