**Denise M. WASSENAAR, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

No. 93–3043.

United States Court of Appeals, Federal Circuit.

April 14, 1994.

Edith U. Fierst, Fierst & Moss, P.C., Washington, DC, argued for petitioner.

Robert J. Krask, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for respondent. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director and Sharon Y. Eubanks, Asst. Director.

---

Before NEWMAN, MICHEL, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

Denise M. Wassenaar petitions for review of the October 23, 1992 final decision of the Merit Systems Protection Board (Board) in Docket No. DC083191066411. In its decision, the Board sustained the reconsideration decision of the Office of Personnel Management (OPM) denying petitioner's request for computation of her survivor annuity at a higher rate. Because OPM's decision was based on an unreasonable interpretation of the statutes governing survivor annuities, we reverse and remand for recalculation of petitioner's survivor annuity at the higher rate.

## BACKGROUND

The facts of this case present the question of whether the surviving spouse of a law enforcement officer is entitled to receive an annuity computed under 5 U.S.C. § 8339(d)(1) (Supp. IV 1992), rather than under 5 U.S.C. § 8339(a) (Supp. IV 1992), which is applicable to most civil servants, when the law enforcement officer dies prior to his or her fiftieth birthday. The following facts are uncontested.

Richard Wassenaar, petitioner's late husband, died in 1986 at the age of 47, after serving nearly 24 years as a federal law enforcement officer with the Internal Revenue Service. During his period of service, Mr. Wassenaar's pay was reduced by a 7½ percent retirement deduction—the rate applicable to law enforcement officers—rather than by the 7 percent retirement deduction contributed by most other federal employees.

Shortly after Mr. Wassenaar's death, petitioner applied for and was granted a survivor annuity. OPM computed petitioner's annuity using the formula in section 8339(a). In April 1990, petitioner contacted OPM and contested the computation of her annuity. Petitioner argued that because her husband had been a law enforcement officer her annuity should have been computed under section 8339(d)(1), which would have resulted in her receiving an enhanced annuity. As noted

above, the Board sustained OPM's rejection of petitioner's application. This appeal followed.

### DISCUSSION

### I. STANDARD OF REVIEW

■■■ The principal issue presented in this appeal is the proper interpretation of the statutory provision governing the calculation of survivor annuities, 5 U.S.C. § 8341(d) (Supp. IV 1992), along with other provisions incorporated by reference thereto—namely, various subsections of 5 U.S.C. § 8339 (Supp. IV 1992) and 5 U.S.C. § 8336 (Supp. IV 1992). In resolving this issue, we are guided by the following instructions of the Supreme Court:

> When a court reviews an agency's construction of a statute which it administers, it is confronted with two questions. First, always, is the question whether Congress had directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court to decide is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1983). When necessary, in deciding whether a particular construction is permissible, we are mindful that the agency's construction "need not be the *only* reasonable interpretation or the one which the courts view as the most reasonable." *Bain v. Office of Personnel Management,* 978 F.2d 1227, 1231 (Fed. Cir.1992) (citations omitted). Rather, a court must give deference to an agency's interpretation of a statute as long as that interpreta-

tion is drawn from among alternative reasonable interpretations, even if the court might have preferred another. *See Eastman Kodak Co. v. Bell & Howell Document Management Prods. Co.,* 994 F.2d 1569, 1571 (Fed. Cir.1993).

■■■ "Giving deference, however, does not entirely dispense with meaningful review." *Beneficial Corp. v. United States,* 814 F.2d 1570, 1574 (Fed.Cir.1987). To the contrary, an agency's interpretation should not stand if it " 'contravenes clearly discernible legislative intent' or is otherwise unreasonable." *DeCosta v. United States,* 987 F.2d 1556, 1558 (Fed.Cir.1993) (citations omitted). In this regard, we note that "[a]ll statutes must be construed in light of their purpose. A reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and legislative purpose." *Best Power Technology Sales Corp. v. Austin,* 984 F.2d 1172, 1175–76 (Fed.Cir.1993) (quoting *Haggar Co. v. Helvering,* 308 U.S. 389, 394, 60 S.Ct. 337, 339–40, 84 L.Ed. 340 (1940)).

### II. ANALYSIS

■■■ In interpreting a statute, we first examine its language to determine whether Congress has "directly spoken to the precise question at issue." *Chevron,* 467 U.S. at 842, 104 S.Ct. at 2781; *see also VE Holding Co. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1579 (Fed.Cir.1990) (citing *Mallard v. United States Dist. Court for S. Dist. of Iowa,* 490 U.S. 296, 300–01, 109 S.Ct. 1814, 1817–18, 104 L.Ed.2d 318 (1989)), *cert. denied,* 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991). Accordingly, we begin our analysis with the language of the disputed survivor annuity provision:

> If an employee or Member dies after completing at least 18 months of civilian service, his widow or widower is entitled to an annuity equal to 55 percent of an annuity computed under section 8339(a)–(f), (i), (n), (p), and (q) of this title *as may apply with respect to the employee or Member,* . . . .

5 U.S.C. § 8341(d) (Supp. IV 1992) (emphasis added). There is no question that petitioner is entitled to a survivor annuity. Rather, the

dispute centers on which of the referenced subsections of section 8339 should be used to calculate the quantum of the survivor annuity. Petitioner contends that because her deceased husband was a law enforcement officer the appropriate calculation formula is set forth in section 8339(d)(1):

> The annuity of an employee retiring under section ... 8336(c) of this title is—
>
> (A) 2½ percent of his average pay multiplied by so much of his total service as does not exceed 20 years; plus
>
> (B) 2 percent of his average pay multiplied by so much of his total service as exceeds 20 years.

5 U.S.C. § 8339(d)(1). Section 8339(d)(1) incorporates by reference the provisions of section 8336(c) (Supp. IV 1992), which provide in pertinent part that an employee must satisfy certain criteria to be entitled to a *retirement* annuity, as follows:

> [a]n employee who is separated from the service after becoming 50 years of age and completing 20 years of service as a law enforcement officer or firefighter, or any combination of such service totaling at least 20 years, is entitled to an annuity.

5 U.S.C. § 8336(c)(1) (Supp. IV 1992). For its part, the government argues that because petitioner's deceased husband had not satisfied the requirements of section 8336(c)(1)—specifically, he was not yet 50 years of age at the time of his death—petitioner is not entitled to a survivor annuity calculated at the enhanced rate set forth in section 8339(d)(1). Rather, the government contends, petitioner's survivor annuity should be calculated at the lower rate mandated in what it terms a "default" provision, section 8339(a), which applies generally to retiring federal employees. In pertinent part, section 8339(a) states:

> Except as otherwise provided by this section, the annuity of an employee retiring under this subchapter is—
>
> (1) 1½ percent of his average pay multiplied by so much of his total service as does not exceed 5 years; plus
>
> (2) 1¾ percent of his average pay multiplied by so much of his total service as exceeds 5 years but does not exceed 10 years; plus

> (3) 2 percent of his average pay multiplied by so much of his total service as exceeds 10 years....

5 U.S.C. § 8339(a).

Having identified the pertinent statutory language, our inquiry turns to the underlying purpose of the survivor annuity provision in dispute, section 8341(d). Its clearly stated purpose is to provide an annuity to a surviving spouse of a deceased federal employee who has completed at least 18 months of civilian service and who has died before having retired. We observe that in many cases the employee upon whose federal service the survivor annuity depends will have died not only before retirement, but also before eligibility for retirement benefits has vested. Such circumstances do not create a problem because the survivor annuity provision in section 8341(d) is intended as a contingency in the event of untimely death. As such, the issue of whether or not a deceased employee would have been entitled to a retirement annuity does not affect a surviving spouse's entitlement to a survivor annuity under section 8341(d).

A problem in implementing section 8341(d) arises, however, when one realizes that the section 8339 subsections referenced in section 8341(d) set forth different formulae for computing *retirement* annuities rather than for computing *survivor* annuities. Each subsection of section 8339 referenced in section 8341(d) is directed to the computation of an annuity for an employee "retiring under" that subsection. Thus, the language of the referenced subsections of section 8339 is facially incompatible with the purpose of section 8341(d)—to provide a survivor annuity to the spouse of an employee who dies before retiring. In other words, if in interpreting section 8341(d) the "retiring under" language of the referenced section 8339 subsections is given literal effect, none of the subsections could ever "apply with respect to the employee," because in every application of section 8341(d) the employee has died before retiring. Using this construction, section 8341(d) would be rendered a nullity under which no survivor annuity would ever arise. In the present case, for example, it is undisputed that at the time of his death Mr. Wassenaar

would not have been eligible for *any* immediate retirement annuity regardless of which subsection of section 8339 one believes to be applicable.[1]

Thus, under a strict literal reading of the statutory provisions, petitioner would not be entitled to any survivor annuity under section 8341(d). Both parties agree that such an illogical result could not have been intended by Congress. Indeed, we recognize that "an absurd construction of a statutory provision should be avoided." *Witco Chem. Corp. v. United States,* 742 F.2d 615, 619 (Fed.Cir. 1984). Therefore, because a literal construction of the survivor annuity provisions results in an absurd conclusion, we conclude that the plain language of the statute does not provide us with an "unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781. Consequently, we must look elsewhere to discern whether Congress has clearly expressed its intent regarding the precise question at issue.

In our quest we turn to the legislative history of section 8341(d). The provisions of section 8341(d) descend through a series of statutes dating back to at least 1920. Despite numerous additions and amendments to the statutes governing .survivor annuities, each of the ancestor statutes contained the same incongruous language that is present in the current statute. *See, e.g.,* Act of May 22, 1920, ch. 195, § 11, 41 Stat. 619; Federal Executive Pay Act of 1956, ch. 804, § 401, 70 Stat. 754 (1956) (codified at 5 U.S.C. § 2260 (1956)); Act of Sept. 6, 1966, Pub.L. No. 89–554, 80 Stat. 378, 577–78 (codified at 5 U.S.C. § 8341 (1966)). In the Federal Executive Pay Act of 1956, Congress extended survivor benefits to "dependent widowers." In discussing the existing statute, which provided annuities only to widows of employees, a Senate report stated that "an automatic annuity, equal to 50 percent of the employee's or Member's *earned* annuity, is paid to the widow of an employee, or to the widow or widower of a Member, who dies after 5 years of civilian service." S.Rep. No. 2642, 84th Cong., 2d Sess. 11, *reprinted in* 1956 U.S.C.C.A.N. 3725, 3735 (emphasis added). Similarly, the conference report for the 1956 Act states that "[u]pon death of an employee after 5 years of service, or of a retired employee, the surviving widow or widower will receive an annuity equal to 50 percent of the *earned* annuity of the decedent." H.R.Conf. Rep. No. 2935, 84th Cong., 2d Sess. 4 (1956), *reprinted in* 1956 U.S.C.C.A.N. 3739, 3742 (emphasis added). Congress used this same language in discussing a later amendment to the statute governing survivor annuities. The Civil Service Retirement Act of 1969, Pub.L. No. 91–93, § 206, 83 Stat. 136, 140, reduced from five years to eighteen months the minimum amount of federal service required for a surviving spouse to receive an annuity. A Senate report accompanying the legislation contained, in pertinent part, the following hypothetical:

> For example, Joe Jones is a 27–year–old civil service employee with 6 years' service and an average salary of $10,000 a year. He dies leaving a wife and two small children. Mrs. Jones receives a survivor annuity equal to 55 percent of his *earned* annuity.

S.Rep. No. 339, 91st Cong., 1st Sess. 7 (1969), *reprinted in* 1969 U.S.C.C.A.N. 1168, 1174 (emphasis in original). The significance of the term "earned" as used in the various legislative documents, however, is not further explained.

---

1. Mr. Wassenaar, who was 47 years old and had completed almost 24 years of service as of his date of death, would not have satisfied the requirements of any of the various subsections of the "immediate retirement" provision, section 8336, which might have otherwise applied to him:.

 (a) An employee who is separated from the service after becoming *55 years of age* and completing *30 years of service* is entitled to an annuity.

 (b) An employee who is separated from the service after becoming *60 years of age* and completing *20 years of service* is entitled to an annuity.

 (c)(1) An employee who is separated from the service after becoming *50 years of age* and completing *20 years of service* as a law enforcement officer ... is entitled to an annuity.

 (f) An employee who is separated from the service after becoming *62 years of age* and completing *5 years of service* is entitled to an annuity.

 5 U.S.C. §§ 8336(a)–(c), (f) (Supp. IV 1992) (emphasis added).

In sum, the legislative histories of the various enactments of the provisions in section 8341(d) provide few clues as to the intent of Congress. The incorporation of the subsections of section 8339 into section 8341(d) is wholly unexplained in the legislative history. In other words, Congress offered no guidance as to which subsection of section 8339 is applicable in instances such as the present case. Therefore, we conclude that Congress has not specifically addressed the precise question at issue. Consequently, *Chevron* instructs us that we must defer to OPM's interpretation of the statutory provision in question unless we find such interpretation to be unreasonable.

In arguing that OPM's interpretation is reasonable, the government places great significance on the term "earned" appearing at the various locations seen above in the legislative history. The use of the term "earned," the government argues, evinces a clear Congressional intent that a survivor's annuity should be calculated, whenever possible, upon the base retirement annuity that the deceased employee would have been entitled to receive just before his death. Under this view, the government would have us conclude that petitioner is not entitled to an enhanced survivor annuity under section 8339(d)(1) because Mr. Wassenaar had not satisfied. the requirements of section 8336(c) prior to his death, and therefore had not "earned" the enhanced retirement annuity set forth in section 8339(d)(1). This construction of the statutory provisions, however, leads to the same absurd result as discussed above. Specifically, taking the government's position to its logical extreme, petitioner would be entitled to no survivor annuity at all because Mr. Wassenaar—whose ineligibility for *any* immediate retirement annuity at the time of his death is undisputed—had no more "earned" an annuity under the subsection advanced by the government, section 8339(a), than he had "earned" an annuity under the subsection advanced by petitioner, section 8339(d)(1).

To avoid such an obviously unintended and absurd result, the government concedes, as an exception to its general rule, that it is not necessary for an employee to be eligible to retire under the "default" provision, section 8339(a), for a survivor annuity to be payable to the employee's surviving spouse. Rather, the government argues, the extra "earned" requirement should only be imposed "whenever possible"—that is, in all cases except where its imposition would result in a total forfeiture of a survivor annuity. Apparently, the government's position is that, even where the referenced subsections of section 8339 are being used to calculate survivor annuities rather than retirement annuities, all of the retirement-specific criteria appearing in section 8339 should be given effect, with the sole exception of those retirement-specific criteria imposed by section 8339(a). In support of its position, the government points to the language of section 8339(a) which states that an annuity is to be calculated under section 8339(a) "[e]xcept as otherwise provided by" the other subsections of section 8339. The noted language in section 8339(a), the government contends, shows that Congress intended section 8339(a) to act as a "general," or "default," formula for use when no other provision of section 8339 referenced in section 8341(d) would apply.

We disagree. Neither the statutory language nor the legislative history reveals any intent by Congress to impose the retirement-specific requirements invoked by section 8339 when calculating survivor annuities pursuant to section 8341(d). OPM's interpretation, which gives effect to the retirement-specific requirements appearing in section 8336(c)(1) via section 8339(d)(1), while ignoring the retirement-specific requirements appearing in section 8339(a), is an illogical and arbitrary distinction unsupported by the statutory language or the legislative history. Inasmuch as Mr. Wassenaar was not, at the time of his death, entitled to an annuity calculated under either of the provisions at issue—sections 8339(a) and 8339(d)(1)—there is no more logic to calculating petitioner's survivor annuity under the former provision than to calculating it under the latter provision. If we assume, as the government contends, that the term "earned" appearing in the legislative history means that Congress intended that a *survivor* annuity should be available only to the extent that a *retirement* annuity was earned during the employee's lifetime, there is nothing in the legislative

history to support OPM's position that section 8339(a) should be treated differently. As discussed above, because section 8341(d) would be rendered a nullity if the "retiring under" language appearing in section 8339 is given literal effect, we reject the notion that Congress intended that the retirement-specific requirements in any subsection of section 8339 should be given effect when calculating a survivor annuity.

Nor does the language of section 8339(a) quoted by the government, "[e]xcept as otherwise provided," suggest a different result. As noted above, the government contends that this language exempts section 8339(a) from its proffered general rule that a survivor annuity should be available only to the extent that a retirement annuity was earned during the employee's lifetime. However, when the preamble of section 8339(a) is read in its entirety,[2] it becomes clear that the noted language in section 8339(a) logically cannot be so construed. Initially, we note that, by its express terms, section 8339(a) was drafted to apply in the context of calculating an annuity for a retiring employee. In the retirement annuity context, the express language of section 8339(a), i.e., that it applies in the case of "an employee retiring under this subchapter," indicates that unless an employee has satisfied the basic criteria for retirement eligibility set forth in other sections of the subchapter, *none* of the subsections of section 8339, including section 8339(a), would apply to that employee. Presumably, the government would not dispute the proposition that the "[e]xcept as otherwise provided" language appearing in section 8339(a) under no circumstances excuses a claimant for a *retirement* annuity from the basic retirement requirements. Therefore, we can see no reason why that exact same language of section 8339(a) would operate to excuse the retirement-specific requirements in the survivor annuity context, when it does not so operate in the retirement annuity context. Put another way, OPM acted arbitrarily in construing the "[e]xcept as otherwise provided" language appearing in section 8339(a) in one manner for the purpose of calculating a retirement annuity, and in a completely different and inconsistent manner for the purpose of calculating a survivor annuity. Either "[e]xcept as otherwise provided" excuses both types of annuity claimants (i.e., retirement and survivor) from satisfying the retirement criteria or it excuses neither type. Because it would be absurd to construe the language as excusing a claimant from the retirement criteria in the *retirement* annuity context, we conclude that the noted language could not logically excuse a claimant from the retirement criteria in the *survivor* annuity context.

In sum, OPM concedes that an exclusion from retirement criteria for a survivor annuity claimant under section 8339(a) is vital to the reasonableness of its interpretation of the statute. However, we can find no logical or textual basis from which to infer that Congress intended that the retirement-specific requirements should be imposed when calculating a survivor annuity under section 8339(d)(1), but not when calculating a survivor annuity under section 8339(a). Because we find no basis for such a distinction, we conclude that OPM's interpretation is unreasonable.

 Having rejected OPM's interpretation as unreasonable, we must construe the provisions ourselves, keeping in mind that "[a]ll statutes must be construed in light of their purpose." *Best Power Technology,* 984 F.2d at 1175. As noted above, section 8341(d) makes reference to the section 8339 subsections for the purpose of providing *survivor* annuities rather than *retirement* annuities. Further, we have observed that a literal reading of the incongruous "retiring under" language appearing in the referenced section 8339 subsections leads to an absurd and unintended result. In view of these circumstances, we can see no reasonable interpretation of the statute other than to ignore, for the purposes of calculating survivor annuities, the retirement-specific requirements invoked by the subsections of section 8339 referenced in section 8341(d). We read section 8341(d) as a sort of short-hand notation used to refer to the various "types" of em-

---

**2.** "(a) Except as otherwise provided by this section, the annuity of an employee *retiring under* this subchapter is—. . . ." 5 U.S.C. § 8339(a) (Supp. IV 1992) (emphasis added).

ployees. If one views as a whole the subsections of section 8339 referenced in section 8341(d), one finds support for this view. More particularly, section 8339(a) applies to the remainder of employees who do not fall into one of the following categories:

8339(b)—Congressional employees;

8339(c)—Congressional Members;

8339(d)(1)—Law enforcement officers and firefighters;

8339(d)(2)—Panama Canal Company or Canal Zone Government employees;

8339(d)(3)—Panama Canal Commission employees;

8339(d)(4)—Law enforcement offices and firefighters who performed service in the Republic of Panama, or who were employed by the Panama Canal Company or Canal Zone Government;[3]

8339(d)(6)—Bureau of Indian Affairs, Indian Health Service, and tribal organization employees;

8339(d)(7)—Judges of the U.S. Court of Military Appeals;

8339(e)—Air traffic controllers;

8339(n)—Judges of the U.S. Court of Federal Claims, bankruptcy judges, and U.S. magistrates;

8339(p)—Part-time employees; and

8339(q)—Members of the Capitol Police.[4]

In view of the obvious categorization of the referenced subsections of section 8339 into types of employees, we believe that Congress, by including the phrase "as may apply with respect to the employee" in section 8341(d), intended the reference to the various section 8339 subsections to be a convenient method of indicating which formula should be used to calculate a survivor annuity for a particular type of employee. In this way, the referenced subsections of section 8339 serve a dual function by providing a single formula to be used both for calculating retirement annuities and for calculating survivor annui-

ties, depending on the context. Only the mechanism by which the occasion arises for each separate calculation differs. In the case of a retirement annuity, the employee must satisfy the particular age and service requirements specific to his type of employment. In the case of a survivor annuity, the employee must die after completing at least 18 months of civilian service. These two triggering mechanisms are separate and distinct from one another, and we can see no reason—either by mandate of Congress or by the dictates of logic—that they should be intermingled to form a sort of hybrid annuity, i.e., one that requires an arbitrary and somewhat perverse combination of age, service, and untimely death. Finally, there is no reason to believe that Congress, which provided special and more favorable retirement terms for law enforcement officers than for the generality of government employees, did not intend to carry over this more favorable treatment for the calculation of the annuity of the widow of a law enforcement officer who died before reaching the age of 50.

## CONCLUSION

In sum, we find that the controlling statutes are silent or ambiguous on the issue before this court. Furthermore, we hold that OPM's interpretation of the statutes was unreasonable. Accordingly, we reverse the decision of the Board and remand with instructions that petitioner's survivor annuity be calculated by OPM using the annuity calculation rate set forth in section 8339(d)(1).

## COSTS

Each party shall bear its own costs.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

---

**3.** Section 8339(d)(5) provides definitions of the phrases "Panama Canal service" and "Executive agency" to be used in section 8339(d).

**4.** Regarding the remaining subsections of section 8339 referenced in section 8341(d), section 8339(f) specifies a ceiling for the maximum amount of the calculated annuity, whereas sec-

tion 8339(i) excludes certain periods of civilian service from the annuity calculation. Although these subsections admittedly do not specify "types" of employees as do the other subsections, we do not believe that this fact detracts from the validity of our analysis.