# United States Court of Appeals
# for the Federal Circuit

---

**ROBERT DAVID DUPUCH-CARRON, ELIZABETH JOANNA CARRON, AS THE LEGAL REPRESENTATIVES OF THEIR MINOR SON, A. R. D-C.,**
*Petitioners-Appellants*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee*

---

2020-1137

---

Appeal from the United States Court of Federal Claims in No. 1:17-vv-01551-RAH, Judge Richard A. Hertling.

---

Decided:  August 11, 2020

---

CURTIS RANDAL WEBB, Twin Falls, ID, argued for petitioners-appellants.

ROBERT PAUL COLEMAN, III, Vaccine/Torts Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee.  Also represented by ETHAN P. DAVIS, C. SALVATORE D'ALESSIO, GABRIELLE M. FIELDING, CATHARINE E. REEVES.

---

Before PROST, *Chief Judge*, CLEVENGER and STOLL, *Circuit Judges*.

CLEVENGER, *Circuit Judge*.

Appellants Robert David Dupuch-Carron and Elizabeth Joanna Carron, husband and wife, are the legal representatives of the estate of their deceased infant son, A.R. D-C. Appellants filed an action seeking compensation for injuries allegedly compensable under the National Vaccine Injury Compensation Act, 42 U.S.C. §§ 300aa–1 et seq. ("the Vaccine Act"). Appellants asserted standing to seek compensation pursuant to 42 U.S.C. § 300aa–11(c)(1)(B)(i)(III), which grants standing to a person who "received [a covered] vaccine outside the United States or a trust territory and the vaccine was manufactured by a vaccine manufacturer located in the United States and such person returned to the United States not later than 6 months after the date of the vaccination." On the parties' cross-motions for summary judgment, the Special Master ruled that Appellants are ineligible to seek compensation under the Vaccine Act, granted the Secretary of the Department of Health & Human Services' (the "Government" or "HHS") motion, and dismissed the petition. *See Dupuch-Carron v. Sec'y of Health & Hum. Servs.*, No. 17-1551V, 2019 WL 2263369 (Fed. Cl. Apr. 23, 2019). Appellants filed a motion for review with the United States Court of Federal Claims ("the Claims Court") pursuant to 42 U.S.C. § 300aa–12(e). The Claims Court denied Appellants' motion for review. *See Dupuch-Carron v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 659 (2019). For the reasons discussed herein, we affirm.

## BACKGROUND

### I. Facts

Appellants were domiciled in Nassau, The Bahamas, for the entirety of the time period relevant to this case. Mrs. Carron is a citizen of the United Kingdom and avers

that she is a "frequent visitor to the United States," spending "10 to 12 long weekends" in the country each year. *Dupuch-Carron*, 144 Fed. Cl. at 660. During a trip to Coral Gables, Florida from March 24 to April 3, 2015, Mrs. Carron visited an internist, who informed her that she was pregnant. After learning of her pregnancy, she claims to have traveled to the United States an additional four times while pregnant.

Mr. Dupuch-Carron was born in the United States. He appears to have grown up in The Bahamas but recalls "spen[ding] a great deal of time [in the United States] as a child during the summer holidays." *Id.* (alteration in original). Mr. Dupuch-Carron also avers that he is a "frequent visitor to the United States," spending "between 30 and 45 days in the United States on business" in a typical year. *Id.*

Mr. and Mrs. Dupuch-Carron's son, A.R. D-C., was born on November 24, 2015, at Doctors Hospital in Nassau, The Bahamas. He continued to live in Nassau for the first six months of his life. During that time, A.R. D-C. had unremarkable well-child visits at his pediatric center in Nassau, and was considered to be healthy and developing normally. He also received his first two sets of vaccinations in Nassau, with no apparent adverse consequences.

On June 23, 2016, during his six-month well-child visit to his pediatrician in Nassau, A.R. D-C. received his third set of vaccinations, which included the DTap, IPV, HIB, HBV, Prevnar, and rotavirus vaccinations. There is no dispute that the eight vaccines A.R. D-C. received during his June 23rd visit to the pediatrician are listed in the Vaccine Injury Table and were manufactured by companies with a presence in the United States.

On July 7, 2016 and July 9, 2016, A.R. D-C. presented at the pediatrician with complaints of a fever greater than 102 degrees Fahrenheit, crankiness, stuffy nose, rattling in his chest, occasional chesty coughs, reduced activity,

vomiting, and diarrhea. A.R. D-C.'s parents brought him to the emergency room at Doctors Hospital in Nassau on July 10, 2016 with complaints of fever and vomiting for five days, irritability, and decreased appetite. The doctors determined he had thrombocytopenia and pancytopenia for which he received a blood transfusion, and febrile neutropenia for which he was given an intravenous antibiotic. On July 11, 2016, A.R. D-C. was transferred to the intensive care unit at Princess Margaret Hospital in Nassau, where a pediatric hematologist-oncologist recommended he be transferred to an institution "equipped to enable quick turn around and confirmation of the leukemia if present." *Dupuch-Carron*, 144 Fed. Cl. at 661.

Physicians in The Bahamas determined that A.R. D-C. would receive better treatment in the United States, and on July 13, 2016, A.R. D-C. was transferred by air ambulance to Nicklaus Children's Hospital in Miami, Florida, where he was diagnosed with hemophagocytic lymphohistiocytosis ("HLH"). HLH is an autoimmune disease of the blood, fatal unless treated successfully. A.R. D-C. was treated at Nicklaus Children's Hospital until he was discharged on August 12, 2016, "on the condition he remain in Florida as an outpatient." *Id.*

A.R. D-C. received weekly treatment as an outpatient at Nicklaus Children's Hospital. A.R. D-C. was cleared to leave the United States over the Christmas season, so the family returned to The Bahamas. On February 28, 2017, A.R. D-C. was readmitted to Nicklaus Children's Hospital. He was diagnosed with acute myeloid leukemia ("AML"). A.R. D-C. underwent treatment, which included chemotherapy and radiation at Cincinnati Children's Hospital in Cincinnati, Ohio, as well as a bone-marrow transplant at Johns Hopkins Bloomberg Children's Hospital in Baltimore, Maryland.

On October 17, 2017, Appellants filed a petition under the Vaccine Act. On December 24, 2017, A.R. D-C. died

from AML, and on March 26, 2018, Appellants filed an amended petition, alleging that the AML, which caused A.R. D-C.'s death, was a complication resulting from the treatment he had received for his vaccine-induced HLH.

## II. Procedural History

In Vaccine Act cases, the Claims Court and its special masters have jurisdiction over proceedings to determine if a petitioner under § 300aa–11 is entitled to compensation and the amount of such compensation. 42 U.S.C. § 300aa–12(a).

Prior to the filing of the amended petition, the Special Master in this case identified, as a threshold question, the issue of whether Appellants were eligible for compensation under the Vaccine Act because the vaccines were administered outside of the United States. The Special Master directed the parties to file cross-motions for summary judgment on that limited issue.

On March 26, 2018, concurrent with their filing of the amended petition, Appellants filed a Motion for Partial Summary Judgment on the limited issue of their eligibility under the Vaccine Act for compensation. Specifically, Appellants argued that A.R. D-C. "returned," under that term's plain meaning of "go back," to the United States within 6 months of receiving his vaccinations as required by 42 U.S.C. § 300aa–11(c)(1)(B)(i)(III). Appellants, citing the maternal immunization amendment to the Vaccine Act as support, argued that A.R. D-C.'s initial entrance into the United States occurred while *in utero*, and that A.R. D-C.'s "return" to the United States occurred when he traveled to Florida seeking medical treatment for HLH within 6 months of receiving his vaccinations.

On June 7, 2018, the Government filed a Cross-Motion for Summary Judgment on that threshold issue. The Government argued that "the recent maternal immunization amendment to the Vaccine Act establishes that a child *in*

*utero* can 'receive' a vaccine but it does not establish that the child *in utero* was 'present' in the United States for purposes of a later 'return.'" *Dupuch-Carron*, 2019 WL 2263369, at *5. Specifically, the Government argued that: (1) 42 U.S.C. § 300aa–11(c)(1)(B)(i)(III) requires that a "person" "return" to the United States within six months of receiving a vaccination; (2) A.R. D-C.'s " mother's entries into the United States while pregnant do not mean that [he] was 'present' [as a person] in the United States prior to birth"; and (3) "A.R. D-C. was not present in the United States at any time between his birth and his vaccinations." *Id.* (internal citations omitted). Thus, according to the Government, because A.R. D-C. had never previously been in the United States as a "person," as required by the statute, his "post-vaccination entry into the United States cannot constitute a 'return.'" *Id.*

The Government also argued that even if A.R. D-C. is recognized as a "person" who was present in the United States while *in utero*, A.R. D-C. did not "return[] to the United States," under a proper interpretation of the phrase, within six months after the date of vaccination. Specifically, the Government argued that a court does not construe statutes in a vacuum, and the words of a statute, such as "return," must be read in their context and with a view to their place in the overall statutory scheme. As support, the Government cited to the Claims Court's decision in *McGowan v. Secretary of the Department of Health & Hum. Services*, which found that because "the word 'return' relies on its context in order to impart a sense of permanence, the plain meaning rule is not dispositive." 31 Fed. Cl. 734, 738 (1994). Instead, according to the *McGowan* court, the phrase "returned to the United States" was limited to persons who had previously lived in the United States and returned within six months of vaccination with the intention to remain permanently in the United States from that point on. *See id.* at 734–40.

Appellants filed their Response and Reply on July 12, 2018. On April 23, 2019, however, the Special Master denied Appellants' Motion and granted the Government's Motion. First, the Special Master found that while "Congress did expressly amend the Vaccine Act to permit a cause of action alleging that a child was injured by transplacental exposure to a vaccine administered to his or her mother (but only after that child was born alive)," "this amendment did not change the definition of child or person," which is limited to live-born members of the species *homo sapiens*. *Dupuch-Carron*, 2019 WL 2263369, at \*6. Thus, according to the Special Master, "A.R. D-C., while living and breathing outside of his mother's body, was never present in the United States before his vaccinations or the onset of his severe illness" and "his entrance to the United States, while within six months after the vaccinations at issue, cannot be construed as a 'return.'" *Id.* Second, the Special Master found that even if A.R. D-C. was viewed to be a person upon being carried *in utero* into the United States, there was not sufficient evidence that he would have "returned to the United States" within six months, as that phrase was construed in *McGowan. Id.* at \*10.

On May 23, 2019, Appellants filed a Motion for Review of the Special Master's decision, asking the Claims Court to review and reverse the Special Master's decision. In the Motion for Review, Appellants raised the following objection:

> The special master's conclusion that the petitioners were not eligible to seek compensation from the National Vaccine Injury Compensation Program because their son [A.R. D-C.]: 1) could not be viewed as a person who was present in the United States prior to his vaccinations; and 2) had not returned to the United States within six months after vaccinations was not in accordance with the law.

*Dupuch-Carron*, 144 Fed. Cl. at 662.

The Government filed its Response to Appellants' Motion for Review on June 20, 2019, arguing that the Special Master's decision on Appellants' eligibility to seek compensation under the Vaccine Act was correct. With the Claims Court's leave, Appellants filed their Reply on July 5, 2019. The Claims Court heard oral argument on Appellants' Motion for Review on September 5, 2019.

The Claims Court issued its opinion under seal on September 10, 2019 and reissued it for public availability on September 25, 2019. With respect to the first issue, the Claims Court found that "[t]he Vaccine Act considers a child whose mother receives a vaccine while the child is *in utero* to be a 'person,'" and therefore assumed without deciding, for the purposes of its analysis, that A.R. D-C. was a "person" under the relevant portions of the Vaccine Act, with a prior presence in the United States. *Dupuch-Carron*, 144 Fed. Cl. at 664 n.12. Thus, before the Claims Court, the case turned on the second issue raised by Appellants—whether A.R. D-C.'s arrival for medical treatment constituted "return" for the purposes of the Vaccine Act's exception to its requirement that claimants be vaccinated in the United States.

While the Claims Court declined to adopt the more narrow reading of the statute advanced in *McGowan*, it nevertheless found that, "[i]n light of the silence in the legislative record and the presumptions attendant to the task of statutory interpretation in this case, [there is] nothing to suggest that Congress meant to cover foreign nationals arriving in the United States for the purpose of seeking medical treatment when it used the word 'return' in the Vaccine Act." *Id.* at 666. Accordingly, "[b]ecause A.R. D-C.'s entry into the United States to receive medical treatment did not fall within the more specific meaning of 'return to the United States'" laid out by the Claims Court, the court held that A.R. D-C. had "not satisfied the requirements under 42 U.S.C. § 300aa–11(c)(1)(B)(i)(III)," *id.* at 667, and denied Appellants' Motion for Review.

This appeal followed.

## DISCUSSION

This court has jurisdiction to review the final judgment of the Claims Court under 42 U.S.C. § 300aa–12(f). In Vaccine Act cases, we review the Claims Court's decision *de novo*, "applying the same standard of review as the Court of Federal Claims applied to its review of the special master's decision." *Griglock v. Sec'y of Health & Hum. Servs.*, 687 F.3d 1371, 1374 (Fed. Cir. 2012) (citation omitted); *see also Paluck v. Sec'y of Health & Hum. Servs.*, 786 F.3d 1373, 1378 (Fed. Cir. 2015). "We owe no deference to the trial court or the special master on questions of law, but we uphold the special master's findings of fact unless they are arbitrary or capricious." *Lozano v. Sec'y of Health & Hum. Servs.*, 958 F.3d 1363, 1368 (Fed. Cir. 2020) (citing *Griglock*, 687 F.3d at 1374). "Thus, although we are reviewing as a matter of law the decision of the Court of Federal Claims under a nondeferential standard, we are in effect reviewing the decision of the Special Master under the deferential arbitrary and capricious standard on factual issues." *Griglock*, 687 F.3d at 1374 (internal citations omitted).

The Vaccine Act gives the Claims Court (and its special masters) jurisdiction "over proceedings to determine if a petitioner under section 300aa–11 of this title is entitled to compensation under the [Vaccine Injury Compensation] Program and the amount of such compensation." *Martin ex rel. Martin v. Sec'y of Health & Hum. Servs.*, 62 F.3d 1403, 1406 (Fed. Cir. 1995) (quoting 42 U.S.C. § 300aa–12(a) (Supp. V 1993)). "Section 300aa–11, in turn, sets out the rules governing petitions for compensation." *Id.*

The Vaccine Act, 42 U.S.C. § 300aa–11(c)(1)(B)(i), delimits the categories of persons who may pursue a claim under it. Pursuant to the relevant provision, the person seeking compensation under the Act must show that he or she:

(I) received the vaccine in the United States or in its trust territories,

(II) received the vaccine outside the United States or a trust territory and at the time of the vaccination such person was a citizen of the United States serving abroad as a member of the Armed Forces or otherwise as an employee of the United States or a dependent of such a citizen, or

(III) received the vaccine outside the United States or a trust territory and the vaccine was manufactured by a vaccine manufacturer located in the United States and such person returned to the United States not later than 6 months after the date of the vaccination . . .

42 U.S.C. § 300aa–11(c)(1)(B)(i).

Appellants do not claim that either 42 U.S.C. § 300aa–11(c)(1)(B)(i)(I) or § 300aa–11(c)(1)(B)(i)(II) is applicable to this case. Therefore, the question before the court, as it was before the Claims Court and Special Master, is whether 42 U.S.C. § 300aa–11(c)(1)(B)(i)(III) allows Appellants, under the specific facts of this case, to apply for compensation under the Vaccine Act.

Section 300aa–11(c)(1)(B)(i)(III) limits compensation under the Vaccine Act to (1) persons who (2) returned to the United States not later than 6 months after the date of the vaccination. Accordingly, we address whether: (1) A.R. D-C. was a "person" who had previously been in the United States in order for any subsequent travel there to constitute a "return"; and (2) A.R. D-C. "returned to the United States" within 6 months after the date of his vaccinations.

## I.    A.R. D-C. Was Not a "Person" Who Had Previously Been to the United States

The Claims Court found that "[t]he Vaccine Act considers a child whose mother receives a vaccine while the child

is *in utero* to be a 'person,'" *Dupuch-Carron*, 144 Fed. Cl. at 664 n.12, and therefore assumed without deciding, for the purposes of its analysis, that A.R. D-C. was a "person" under the relevant portions of the Vaccine Act, with a prior presence in the United States. We review the Claims Court's decision *de novo* and find, for the reasons discussed below, that it misinterpreted the relevant language of the Vaccine Act and thus impermissibly assumed that a child *in utero* is a "person" under 42 U.S.C. § 300aa–11(c)(1)(B)(i)(III).

It is undisputed that A.R. D-C. was born in The Bahamas, resided in The Bahamas uninterrupted for his first six months of life, received the vaccinations at issue in The Bahamas, and did not enter the United States as a live born child until nearly three weeks after vaccination for the purpose of medical treatment. Nevertheless, a "person" who receives a vaccination outside of the United States is eligible to seek compensation through the Vaccine Act under Section 300aa–11(c)(1)(B)(i)(III) if he "returned to the United States" not later than six months after the date of vaccination. *See* 42 U.S.C. § 300aa–11(c)(1)(B)(i)(III). Appellants concede that "[i]mplicit in the word 'returned' is a requirement that the *person* had been present in the United States at some time before the vaccination." Appellants' Br. 43 (italics added). Thus, in order to show that A.R. D-C. "returned to the United States," Appellants must first show that their child, A.R. D-C., was a "person [that] had been present in the United States" at some time before the vaccination. According to Appellants, A.R. D-C.'s prior presence in the United States *in utero* satisfies the relevant statute.

The definition of "person" and "child" applicable to "any Act of Congress," including the Vaccine Act, is "every infant member of the species homo sapiens who is born alive at any stage of development." 1 U.S.C. § 8(a). Though they acknowledge the definition's applicability, Appellants point out that 1 U.S.C. § 8(c) states, "[n]othing in this

section shall be construed to affirm, deny, expand, or contract any legal status or legal right applicable to any member of the species homo sapiens at any point prior to being 'born alive.'" *See* Oral Arg. at 28:33–30:04, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1137.mp3. And, based on the text of the Vaccine Act in view of cases involving transplacental exposure to a vaccine, and decisions interpreting the Social Security Act, Appellants argue that an unborn fetus is a "person" having an independent and legally significant presence under the Vaccine Act that cannot be denied or contracted by 1 U.S.C. § 8(a). *Id.* We disagree.

Appellants first allege that "[t]wo decisions from the Court of Federal Claims and a third from a special master have held that a child in utero is a 'person' for the purposes of the Vaccine Act." Appellants' Br. 46–47. In *Rooks v. Sec'y of Dep't of Health & Hum. Servs.*, *Melton v. Sec'y of Dep't of Health & Hum. Servs.*, and *Burch v. Sec'y of Dep't of Health & Hum. Servs.*—the opinions cited by Appellants—the Claims Court and Special Masters were presented with the question of whether a child, whose mother received a vaccine while it was *in utero*, can be deemed to have also "received" the vaccine, such that they can petition for compensation under the Vaccine Act once born. *See Rooks v. Sec'y of Dep't of Health & Hum. Servs.*, 35 Fed. Cl. 1, 4 (1996) (stating "this case deals with the special master's legal determination of the meaning of 'received' under the Vaccine Act" and finding "that the potential to 'receive' a vaccine while in utero exists"); *Burch v. Sec'y of Dep't of Health & Hum. Servs.*, No. 99-946V, 2010 WL 1676767 (Fed. Cl. Spec. Mstr. Apr. 9, 2010); *Melton v. Sec'y of Dep't of Health & Hum. Servs.*, No. 01-105V, 2002 WL 229781 (Fed. Cl. Spec. Mstr. Jan. 25, 2002). These cases do not state or imply, however, that those *in utero* are themselves "persons" that have a separate legal presence while traveling abroad for purposes of determining eligibility to seek compensation through the Vaccine Act.

Appellants nevertheless allege that the 21st Century Cures Act's (the "Cures Act") amendment to the Vaccine Act,[1] which reflects those earlier decisions, "recognized and ratified the conclusion that a child in utero is a person for the purposes of the Vaccine Act." Appellants' Br. 51. First, the Cures Act's amendment to the Vaccine Act—42 U.S.C. § 300aa–11(f)—did not amend the subsection concerning extraterritorial application of the Vaccine Act at issue here. Second, rather than make explicit the principle that a child *in utero* is a "person" for all purposes of the Vaccine Act, the statute makes clear that those whose mother received a vaccine while they were *in utero* do not have a cognizable claim under the Vaccine Act until they become a "person"— *i.e.*, "a member of the species homo sapiens who is born alive at any stage of development." *See* 42 U.S.C. § 300aa–11(f)(1); 1 U.S.C. § 8(a).

The amendment, which addresses "Maternal immunization," states:

(1) In general

Notwithstanding any other provision of law, for purposes of this part, both a woman who received a covered vaccine while pregnant and any child ***who was*** in utero at the time such woman received the vaccine shall be considered persons to whom the covered vaccine was administered and persons who received the covered vaccine.

---

[1]    In 2016, the 21st Century Cures Act, Pub. L. No. 114-255, 130 Stat. 1033, 1152 (Dec. 13, 2016), amended the Vaccine Act to provide that "[a] covered vaccine administered to a pregnant woman shall constitute more than one administration, one to the mother and one to each child . . . who was *in utero* at the time such woman was administered the vaccine."

(2) Definition

As used in this subsection, the term "child" shall
have the meaning given that term by subsections
(a) and (b) of section 8 of Title 1, except that, for
purposes of this subsection, such section 8 shall be
applied as if the term "include" in subsection (a) of
such section were replaced with the term "mean".

42 U.S.C. § 300aa–11(f) (emphasis added).

Appellants and the Claims Court have both interpreted
42 U.S.C. § 300aa–11(f)(1) as suggesting that a "child in
utero" is a "person." *See Dupuch-Carron*, 144 Fed. Cl. at
664 n.12; Appellants' Reply Br. 16. They are mistaken.
The first paragraph states that both a woman who received
a covered vaccine and a child, who was previously *in utero*
at the time such woman received the vaccine, are "persons"
deemed to have received the vaccine. 42 U.S.C. § 300aa–
11(f)(1). The second paragraph states that the term "child"
shall retain the meaning given that term by subsections (a)
and (b) of section 8 of Title 1. *Id.* As mentioned above,
1 U.S.C. § 8(a) states that "the words 'person', 'human be-
ing', 'child', and 'individual', shall [mean][2] every infant
member of the species homo sapiens who is born alive[3] at

----

[2]    In accordance with 42 U.S.C. § 300aa–11(f)(2), "the
term 'include' in subsection (a) of" 1 U.S.C.A. § 8 has been
"replaced with the term 'mean.'"

[3]    "[T]he term 'born alive', with respect to a member
of the species homo sapiens, means the complete expulsion
or extraction from his or her mother of that member, at any
stage of development, who after such expulsion or extrac-
tion breathes or has a beating heart, pulsation of the um-
bilical cord, or definite movement of voluntary muscles,
regardless of whether the umbilical cord has been cut, and
regardless of whether the expulsion or extraction occurs as

any stage of development." 1 U.S.C. § 8(a). Thus, unlike other federal legislation in which Congress has explicitly bestowed special legal status upon children *in utero*,[4] 42 U.S.C. § 300aa–11(f) makes clear that the words "person" or "child," included therein, retain their 1 U.S.C. § 8(a) definition. Accordingly, only once it is born may a child whose mother received a vaccine while they were *in utero* be considered a "person" that has received the vaccine.

Appellants also argue that decisions addressing the status of a child *in utero* in the context of surviving child benefits under the Social Security Act support their claim that A.R. D-C. was present in the United States before birth under the Vaccine Act. The cases cited by Appellants dealt with the issue of whether an applicant met the statutory requirements to be considered a "child" of a deceased wage earner for purposes of child support under the Social Security Act. *See, e.g.*, *Wagner v. Finch*, 413 F.2d 267, 268–69 (5th Cir. 1969) ("The crucial issue remaining is whether or not this child, conceived outside of marriage and born after her father's death, may nevertheless be deemed to be her father's child under 42 U.S.C.A. 416(h)(3) of the Act."). Section 8(a) of Title 1 limits the term "child," as used in all

---

a result of natural or induced labor, cesarean section, or induced abortion." 1 U.S.C. § 8(b).

[4]    For example, the Unborn Victims of Violence Act, 18 U.S.C. § 1841, applies to injurious acts committed against a child *in utero*, but, unlike 42 U.S.C. § 300aa–11(f), specifically includes its own definition of "unborn child" that does not incorporate or refer to the "born alive" language from 1 U.S.C. § 8's definition of "person" or "child" applicable to the Vaccine Act. *See* 18 U.S.C. § 1841(d) (2018) ("As used in this section, the term 'unborn child' means a child *in utero*, and the term 'child *in utero*' . . . means a member of the species homo sapiens, at any stage of development, who is carried in the womb.").

acts of Congress, to those born alive. As Appellants previously pointed out, however, this definition should not be construed to affirm, deny, expand, or contract any legal status or legal right applicable to any member of the species homo sapiens at any point prior to being "born alive." 1 U.S.C. § 8(c). As such, it cannot abridge any legal status afforded to unborn children under the Social Security Act, which has its own, separate, definition of "child" that does not include any requirement that they be "born alive." *See* 42 U.S.C. § 416(e). As discussed above, no similar legal right applicable to fetuses exists under the Vaccine Act. For at least these reasons, we agree with the Government that the Social Security Act and its implementing regulations are entirely distinct and separate from the Vaccine Act, and the interpretation of the Social Security Act's language has no bearing on the language included in the Vaccine Act.

For the foregoing reasons, we hold that 1 U.S.C. § 8's definition of "person" applies to that term as it is used in the Vaccine Act. Accordingly, we find that the Claims Court's assumption that A.R. D-C. was a "person" with a prior presence in the United States was legally improper, and agree with the Special Master that A.R. D-C., while living and breathing outside of his mother's body, was never present in the United States before his vaccinations and, thus, that his entrance to the United States cannot be construed as a "return."

## II.    A.R. D-C. Had Not "Returned to the United States" Within the Meaning of the Vaccine Act

Even if A.R. D-C. could be recognized as a "person" who was present in the United States before vaccination, and the Claims Court's assumption was correct, the parties still disagree as to whether A.R. D-C. "returned to the United States" within six months of his vaccinations. § 300aa–11(c)(1)(B)(i)(III). The Claims Court denied Appellants'

Motion for Review after finding "nothing to suggest that Congress meant to cover" those, like A.R. D-C., who only travel to "the United States for the purpose of seeking medical treatment when it used the word 'return' in the Vaccine Act." *Dupuch-Carron*, 144 Fed. Cl. at 666. For the reasons discussed herein, we agree.

The scope of the Vaccine Act does not, generally, extend beyond the borders of the United States. The Act itself refers to a "national" vaccine injury compensation program, and 42 U.S.C. § 300aa–11(c)(1)(B)(i)(I) broadly provides that anyone, including temporary visitors, who received a scheduled vaccine "in the United States or in its trust territories," are eligible to seek compensation under the Act. The legislative history, moreover, does not address any concern for the continued supply of vaccines outside the United States or the compensation of non-residents of the United States, save for two exceptions. *See McGowan*, 31 Fed. Cl. at 739. First, families of citizens who were employees of the United States or members of the armed forces can petition for compensation under the Vaccine Act, even if the vaccine was received outside the United States or its territories. 42 U.S.C. § 300aa–11(c)(1)(B)(i)(II). Second, as noted above, anyone who received a vaccine made in the United States and who subsequently returned to the United States not later than six months after the vaccination can petition for compensation under the Vaccine Act. 42 U.S.C. § 300aa–11(c)(1)(B)(i)(III). These exceptions, by their wording, apply only to those who previously had some degree of presence in the United States prior to leaving and, in the case of § 300aa–11(c)(1)(B)(i)(III), "returned."

On appeal, as below, Appellants argue that both the Special Master and the Claims Court inappropriately interpreted the word "return" because "[t]he relevant language of the Vaccine Act is not ambiguous," and the Special Master and Claims Court's interpretations of "return" do not comport with the "ordinary meaning" of the word (*i.e.* "to come or go back to"). *Dupuch-Carron*, 144 Fed. Cl. at

664; *see also, e.g.*, Appellants' Br. 18.  Appellants contend that failing to apply the "ordinary meaning" of the word is inconsistent with the Supreme Court's unanimous holding in *Sebelius v. Cloer*, which stated that "[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning."  569 U.S. 369, 376–77 (2013) (quoting *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006)).[5]  Therefore, Appellants argue, under the plain meaning of the unambiguously used definition of "return," they should be allowed to maintain their claim.

Before the Claims Court, the Government did not dispute Appellants' understanding of the "plain meaning" of "return," but instead argued that because such an interpretation, under the Vaccine Act, would lead to "absurd results,"  the plain meaning rule should not apply and that the court must look to the context surrounding the phrase "returned to the United States."  According to the Government, as construed in *McGowan*, 31 Fed. Cl. at 740,[6]

---

[5]   On June 17, 2020, counsel for Appellants also submitted a Citation of Supplemental Authority pursuant to Fed. R. App. P. 28(j), which cited, as support, the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. ___, 140 S. Ct. 1731 (2020).

[6]   The decisive issue in *McGowan* was the meaning of the word "return" in the relevant provision of the Vaccine Act.  31 Fed. Cl. at 738.  The petitioner, who was born in the United States, received two vaccinations in Canada, where she resided and where her father was receiving medical training.  *Id.* at 736.  Within six months of her August 20, 1965 vaccination, the petitioner entered the United States to visit her maternal grandparents.  *Id.*  On October 1, 1990, the petitioner filed an application for compensation under the Vaccine Act, arguing that she suffered encephalopathy as a result of her August 20, 1965 measles vaccine.  *Id.*  As framed by the Claims Court, the question

"return" does not mean a temporary visit, but an arrival "with the intention to remain permanently from that point on." *Dupuch-Carron*, 144 Fed. Cl. at 664.

The Claims Court declined to adopt the reading of the statute advanced by the Government, in reliance on *McGowan*, that "return" must include an intent to establish permanent residence in the United States. Nonetheless, the Claims Court found that "the term 'return' must be limited by its context to avoid absurd results," and held that more is needed than the transient presence allowable under Appellants' overbroad reading of the word "return." *Id.* at 666. On appeal, the Government, dropping its reliance on *McGowan*, argues that the Claims Court is correct. We agree.

Applying the broadest meaning to the phrase "returned to the United States," as argued by Appellants, invites absurd results inconsistent with the statute's context. Take, for example, a French citizen, resident in France, who flew from Paris, France to Tokyo, Japan with a one-day stopover in New York, who then returned to France and received a vaccination. The fact that within six months of the vaccination, the French citizen again stopped for a day in New York on his way to Tokyo, Japan would permit him to submit a Vaccine Act claim under Appellants' broad reading of the statute. Both the Supreme Court and this court, however, have repeatedly held over the years that "[i]f a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity." *Holy*

---

"regarding the definition of 'return' is whether there is a sense of permanence inherent in the word." *Id.* The Claims Court found that simple dictionary definitions of "return" "shed little light on the issue," *id.*, and, after canvassing the legislative history of the Vaccine Act, held "[a]n injured person who does not intend to return to live in the United States should not be able to petition for a claim," *id.* at 739.

*Trinity Church v. United States*, 143 U.S. 457, 460 (1892); *see also Cloer*, 569 U.S. at 377 n.4 (avoiding statutory interpretation that would produce an "absurd result"); *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 252 (2010) (declining to "adopt a view of the statute that . . . would produce an absurd result"); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 454 (1989) ("Where the literal reading of a statutory term would 'compel an odd result,' we must search for other evidence of congressional intent to lend the term its proper scope." (quoting *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 509 (1989))); *Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940) (explaining that a reading of a statute that "would lead to absurd results is to be avoided when [it] can be given a reasonable application consistent with [its] words and with the legislative purpose"); *Pitsker v. Office of Pers. Mgmt.*, 234 F.3d 1378, 1383 (Fed. Cir. 2000) (finding Office of Personnel Management's statutory interpretation violated "the canon of statutory construction that an interpretation that causes absurd results is to be avoided if at all possible"); *Timex V.I., Inc. v. United States*, 157 F.3d 879, 887 (Fed. Cir. 1998) (finding that where "statutory construction frustrates Congress's intent, encourages undesirable behavior, and produces absurd results," it should "be avoided, not rubber-stamped").

When construing a statutory term or phrase to avoid an absurd result, or when the term or phrase is "ambiguous," it "must be read in [its] context and with a view to [its] place in the overall statutory scheme." *Colonial Press Int'l, Inc. v. United States*, 788 F.3d 1350, 1357 (Fed. Cir. 2015) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)); *see also Wassenaar v. Office of Pers. Mgmt.*, 21 F.3d 1090, 1092 (Fed. Cir. 1994) (stating that "[a] reading of [a statute] which would lead to absurd results is to be avoided when [it] can be given a reasonable application consistent with [its] words and legislative purpose"). Indeed, with respect to the language at issue in this

case, Appellants' counsel acknowledged at oral argument that "the factual context of the person's prior presence in the United States and subsequent return is relevant." *See* Oral Arg. at 4:25–43, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1137.mp3. ("It's necessary to understand whether or not there was a return."); *see also id.* at 5:53–6:35 (counsel for Appellants equating "return" with "go back" and acknowledging that "go back" can be ambiguous). Accordingly, the phrase "returned to the United States" must be read in its context and with a view to its place in the overall statutory scheme.

The phrase "returned to the United States," itself, is not addressed in any of the legislative history concerning the Vaccine Act. Thus, the purpose of Congress' enactment of the Act must be understood to guide the court's understanding of the phrase. *See Amendola v. Sec'y of Dep't of Health & Hum. Servs.*, 989 F.2d 1180, 1182 (Fed. Cir. 1993).[7] In *Amendola*, this court found that "the motivating factor behind enactment of the [Vaccine Act] was the desire to protect the vaccine supply by shielding manufacturers from exposure to liability resulting from the small but nevertheless statistically significant incidence of unavoidable injury or death from widespread use of the vaccine." *Id.* at 1186.

While protection of the United States vaccine supply was the motivating factor, however, the Vaccine Act's limited legislative history makes clear that Congress had two

---

[7]   In *Amendola*, this court found that because the Vaccine Compensation Act is a "complex piece of legislation" incorporating its "legislative purpose," "the meaning of any particular phrase or provision," included therein, "cannot be securely known simply by taking the words out of context and treating them as self-evident." *Amendola*, 989 F.2d at 1182.

goals in its enactment.  As the Claims Court correctly noted in *McGowan*, and is not disputed by the parties here:

> The first goal was to "offer fair compensation to victims" injured in connection with childhood vaccination programs.  H.R. 1780, 99th Cong., 1st Sess. (1985); S. 827, 99th Cong., 1st Sess. (1985); H.R. Rep. No. 908, 99th Cong., 2d Sess., pt. 1, at 7 (1986), U.S. Code Cong. & Admin. News 1986, pp. 6287, 6348.  The second was to insure the "continued supply of vaccines that are vital to the public health."  H.R. 1780; S. 827; H.R. Rep. No. 908.  This second goal is linked only to the supply of vaccines in the United States.

*Id.* at 738–39.

Interpreting the Vaccine Act in view of these goals, the *McGowan* court held that 42 U.S.C. § 300aa–11(c)(1)(B)(i)(III) applies "only to those who previously had lived in the United States," *id.* at 739, and "return[ed] to the United States within six months of the vaccination date, with the intention to remain permanently from that point on," *id.* at 740.

Relying on *McGowan*, the Special Master in this case dismissed Appellants' claim after finding that there was no evidence that A.R. D-C. would have established a permanent presence in this country.  As the Claims Court found, however, upon review of the Special Master's decision, while *McGowan*'s permanent residence requirement was too restrictive, more is required of a "return" than a temporary visit for medical treatment.  We agree with the Claims Court that the permanent residence requirement is overly restrictive.  We nonetheless agree with the *McGowan* court that some residence is required both before leaving and upon "return[] to the United States" under 42 U.S.C. § 300aa–11(c)(1)(B)(i)(III).

One of the goals of the Vaccine Act was to provide compensation to those injured in connection with childhood vaccination programs. Congress specifically noted that vaccination programs are facilitated by state and local distribution of vaccines, and at the time of the Act's passage, state laws mandated that "virtually all" children be vaccinated "as a condition for entering school." H.R. Rep. No. 99-908, 99th Cong., 2d Sess., pt. 1, at 4–7 (1986). It is doubtful that the United States or any state or local government would have authority to impose vaccination requirements outside of its own borders (with the exception of persons applying to immigrate to the United States). Allowing those currently living outside the United States, who have not previously lived in the United States, and who were not injured in connection with United States vaccination programs, to receive compensation under the Vaccine Act would not serve the legislative goal of providing compensation to those injured in connection with those childhood vaccination programs.

With respect to Congress's other goal of stabilizing the vaccine market, Congress undoubtedly intended to reduce liability for vaccine manufacturers by limiting civil actions against them from those covered by the Vaccine Act. *See* 42 U.S.C. § 300aa–11(a)(2)-(3); *see also* 42 U.S.C. § 300aa–11(a)(9) ("This subsection applies only to a person who has sustained a vaccine-related injury or death and who is qualified to file a petition for compensation under the Program."). Congress, through the Vaccine Act, has explicitly mandated that "[i]f a civil action which is barred under subparagraph (A) is filed in a State or Federal court, the court shall dismiss the action." 42 U.S.C. § 300aa–11(a)(2)(B). The Vaccine Act, however, does not, nor can it, prevent civil actions against vaccine manufacturers in other countries. Thus, allowing residents of other countries, who have not previously resided in the United States and do not plan on residing in the United States, and were not injured in connection with United States vaccination programs, to

receive compensation under the Vaccine Act would not serve the goal of immunizing United States vaccine manufacturers from suit; those foreign residents could sue in foreign courts not similarly prevented from hearing these cases.[8]

If Congress wished to provide such broad immunity as argued by Appellants, it is hard to see why Congress disallowed claims by persons who never entered the United States or entered the United States at some point before vaccination but did not return again within six months. We surmise that Congress, in enacting this section, intended to provide protection for persons who (1) previously resided in the United States, where they were subject to United States vaccination programs, (2) were temporarily away from the United States when they received the vaccination, and (3) "returned to the United States" within six months with the intention of resuming residence therein.

We hold that because A.R. D-C.'s entry into the United States to receive medical treatment does not fall within the more narrowly construed meaning of "returned to the United States" that the Vaccine Act's broader context

---

[8] With regard to pending civil actions, the Vaccine Act manifests a legislative intent to prevent double compensation. *See* 42 U.S.C.A. § 300aa–11(a)(7) (providing that a damage award, either by settlement or court action, precludes a Vaccine Act petition); § 300aa–11(c)(1)(E) (providing that petitioner must aver in the petition that he has not previously collected a damage award either by settlement or court action). We agree with the *McGowan* court that logic dictates that Congress would not allow the opportunity for double compensation when the petitioner could be compensated outside of the United States. *See McGowan*, 31 Fed. Cl. at 740 n.3.

demands, Appellants have not satisfied the requirements of 42 U.S.C. § 300aa–11(c)(1)(B)(i)(III).

## CONCLUSION

Appellants are not eligible to seek compensation from the Vaccine Program under 42 U.S.C. § 300aa–11(c)(1)(B)(i)(III). First, A.R. D-C., while living and breathing outside of his mother's body, was never present in the United States before his vaccinations such that his entrance to the United States for medical treatment could be construed as a "return." Second, even if A.R. D-C. was a "person" with a prior presence in the United States as a result of his *in utero* travel, he never resided in the United States nor intended to upon his "return." Thus, we hold that A.R. D-C. did not "return[] to the United States" within the meaning of the Vaccine Act. Accordingly, the Claims Court's Order denying Appellants' Motion for Review is affirmed.

## AFFIRMED

### COSTS

The parties shall bear their own costs.